## Jefferson Grocery Company of Pittsburgh *v.* Pittsburgh School District, Appellant.

Argued September 30, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES and COHEN, JJ.

*Regis C. Nairn,* Assistant City Solicitor, with him *J. Frank McKenna, Jr.,* City Solicitor, for City of Pittsburgh, appellant.

*Niles Anderson*, Solicitor, for School District of Pittsburgh, appellant.

*William H. Eckert*, with him *Edward J. Greene, Jacob A. Markel*, and *Eckert, Seamans & Cherin*, and *Markel & Markel*, for appellee.

OPINION BY MR. JUSTICE COHEN, November 10, 1958:

In *Philadelphia School District, Appellant v. Frankford Grocery Co.*, 376 Pa. 542, 103 A. 2d 738 (1954), we held that the Frankford Grocery Company was not taxable under the Act of May 23, 1949, P. L. 1669, 24 P.S. §584.1, which provides that every person engaging in any business in any school district of the first class shall pay an annual tax, and defines business as "carrying on or exercising for gain or profit" any trade, business or commercial activity.

The Frankford Grocery Company was a buying organization established by individually-owned grocery stores. These stores pooled the purchases of their merchandise requirements so that they would be in a position to compete economically with the large food chains. The stock in Frankford was owned by the individual grocery stores that the company served and the dividends (actually discounts) were determined by the amount of the merchandise acquired by the individual stores from Frankford.

This was not a new or unique form of merchandising. Cooperatives, similar to Frankford, have flourished in every community and through them "corner groceries" have successfully competed with the chain stores and have contributed to reducing the cost of food distribution. There is no doubt that the individually-owned "corner grocery store" has been saved from economic annihilation by the so-called "cooperatives." Since the business contemplated by the Act of 1949

meant business carried on for "gain or profit," and since the function of Frankford as a company was not for gain or profit but rather a service to the individually-owned and operated stores, we held they were not taxable under that act.

We must now determine whether Jefferson Grocery Company, which was established to perform the same functions as Frankford for eighteen grocery stores, each owned by the same owners, is subject to the Mercantile Tax Ordinance of the City of Pittsburgh[1] and the Mercantile License Tax Act of the School District of Pittsburgh.[2] Although the rates of the act and the ordinance are dissimilar,[3] both assess the taxes on the gross receipts of a "wholesale dealer or wholesale vendor."[4] The question for our determination on this appeal is whether Jefferson is included in the definition of "wholesale dealer or vendor?"

The lower court, largely on the basis of uncontradicted evidence, made the following findings of fact:

During the period of 1948 through and including 1956 when the taxes were assessed, Jefferson was a coordinator of a retail grocery chain known as "Sparkle Markets." In 1943, this retail grocery business was a family partnership. The individual stores were later incorporated. The individual store corporations could

---

[1] The City of Pittsburgh enacted Ordinance No. 488 pursuant to the Act of June 25, 1947, P. L. 1145, 53 P.S. §2015.1.

[2] The School District of the City of Pittsburgh enacted the tax pursuant to the Act of June 20, 1947 (No. 320), P. L. 745, 24 P.S. §582.1.

[3] The rate provided in the city ordinance was one mill of the gross receipts, whereas the rate provided in the school levy was one-half mill of the gross receipts.

[4] The ordinance and act both define "wholesale dealer or wholesale vendor" as one "who sells to dealers in, or vendors of goods, wares and merchandise and to no other persons."

not purchase merchandise at prices competitive with other retail chains and Jefferson was established and incorporated as a central buying agency for the retail stores. In this way, substantial savings were effected by quantity purchases for all the retail stores in the chain. All of the stock of Jefferson was owned by ten of the retail store corporations; some store corporations owning more than one retail outlet. In 1956, the entire chain of individual stores and Jefferson was sold to one owner.

The findings further disclosed that Jefferson was a purchasing agency only for the Sparkle chain and distributed merchandise to the retail stores at cost. In addition to acting as a purchasing agent for the chain, Jefferson performed all the functions of a management operation. It made no profit and never paid any dividends; it entered into leases for the buildings housing the retail stores; it negotiated collective bargaining agreements; it kept the books for the individual stores; and it obtained blanket liability and fire insurance policies. In this manner, both in coordinated buying and management, Sparkle was able to compete with the food chains operating in the same general vicinity. The court below, concluding that Jefferson was an integral part of a unitary enterprise, namely, Sparkle Markets, held that Jefferson was not taxable and ordered the paid-in taxes, interest and penalties refunded.

The ordinance and the act impose taxes only upon a person who sells merchandise at wholesale or retail. Sparkle Markets already had paid the taxes imposed on them as a retailer. Can it now be said that Jefferson is subject to the tax in the "wholesale" category? The evidence indicated that the original records of their merchandise distribution were entitled "Warehouse Shipments" and the shipped merchandise was

charged to the respective outlets at cost. The central buying agency served only the retail stores in the chain. In the trade Jefferson was recognized as a retail chain and not as a wholesaler. It purchased merchandise at prices set for retail chain stores. Jefferson was also accorded advertising allowances by the manufacturers and producers for promoting their products. Such privileges were not accorded wholesalers. The complete lack of evidence that Jefferson conducted any sales transactions between itself and the individual stores or anyone else, and the positive evidence of the actual functions of Jefferson, supports our conclusion that Jefferson did not sell and, hence, is not taxable as a "wholesaler."

However, the appellants contend that the Articles of Incorporation of Jefferson state that it was incorporated for the purposes of conducting a "wholesale" business. We are not unmindful of the fact that corporate articles signify both a corporation's birth and its purposes. But it is the substance and not the form which controls.[5] The fact that the corporate articles specify a "wholesale" business does not detract from the non-taxability of Jefferson as a "wholesaler" since the operation actually conducted was not that of a wholesaler but rather a service facility to a retailer. Merely because this unified food chain had separately incorporated some of its functions does not mean that additional tax burdens were contemplated.

We have reviewed the cases[6] cited by appellants and

[5] This was stated in the *Frankford* case at page 549: ". . . We deem it unimportant that it is incorporated under the Business Corporation Law. We are not concerned with the form but with the substance of its structure and operation in its . . . activities."

[6] *Appeal of Dyke Motor Supply*, No. 2600 October Term, 1950; *Pittsburgh Steel Products Company v. City of Pittsburgh*, No. 2789 April Term, 1949; and *Frick Coke Company v. School District of*

find that they are inapposite to the facts at bar. In each of those cases, the taxpayer, unlike Jefferson, was engaged in a separate business enterprise involving purchases from, and sales to, persons or corporations wholly unconnected with the taxpayer. Those taxpayers did not possess the unitary character and did not function as a single, integrated retail business corporation such as the Sparkle chain.

We conclude that Jefferson's true relationship or function was that of a centralized supplier for Sparkle Markets' unitary, integrated retail enterprise; being similar to the functions performed by Frankford for the individually-owned stores. Any other conclusion would impose unintended tax burdens under which Sparkle Markets would be unable to effectively partake in local retail competition.

Judgment affirmed.

---

*Pittsburgh*, No. 2607 July Term, 1949, all unreported decisions of the Court of Common Pleas of Allegheny County. For a detailed explanation of these cases, see the Opinion of the County Court of Allegheny County in the instant case, No. A785, 1957.