## Eastern Order Buying Company Appeals

*Paul, Lawrence & Rock*, for appellants.

*David Stahl*, City Solicitor, and *Regis C. Nairn*, Assistant Solicitor for City of Pittsburgh.

GUFFEY, J., September 1, 1961.—The four appeals involved in this action have been consolidated for trial as the parties are the same and the issues identical in each case.

Eastern Order Buying Company and Eastern Order Buyers, Inc., the two appellants in these cases, are organized as cooperative agricultural corporations under the laws of the State of Ohio, having their principal

place of business at Herrs Island, Pittsburgh, Allegheny County, Pa. Appellants are qualified to do business in Pennsylvania as cooperative agricultural corporations under the Act of April 30, 1929, P. L. 885, sec. 25, 14 PS §105, having complied with the legal requirements applicable to foreign corporations doing business in Pennsylvania.

The City of Pittsburgh is a municipal corporation and a city of the second class under the laws of Pennsylvania. Cities of the second class are empowered by the Act of June 25, 1947, P. L. 1145, as amended, 53 PS §6851 et seq., to levy, assess and collect taxes on such persons, transactions, occupations, privileges, subjects and personal property within the limits of the political subdivision as they shall determine.

Pursuant to the authority of this act, the Council of the City of Pittsburgh by its ordinances nos. 488 and 489, approved December 1, 1947, as reenacted and amended, provided for the issuance of mercantile licenses and the imposition of mercantile license taxes for the years 1948 and annually thereafter upon every person engaging in the occupation or business, inter alia, of vendor or dealer in goods, wares or merchandise within the City.

The School District of the City of Pittsburgh is empowered to levy, assess and collect a similar mercantile tax by virtue of the Act of June 20, 1947, P. L. 745, 24 PS §582.1, a mercantile license tax law for first class school districts. Pursuant to this authority, the school district imposed the mercantile tax also. Eastern Order Buying Company and Eastern Order Buyers, Inc., were assessed with the mercantile tax by the two taxing bodies. Eastern Order Buying Company appealed from assessments of the tax for the years 1955 through 1959 of a total amount of $36,482.44 by the City of Pittsburgh and a total of $18,241.22 by the School District of the City of Pittsburgh. Eastern Order Buyers,

Inc., appealed from mercantile tax assessments for the years 1957 through 1959 of a total amount of $28,-441.75 by the City of Pittsburgh and a total of $14,-220.88 by the school district. After a tax hearing held at the request of appellants on February 19, 1960, appellants were notified on May 11, 1960, that the decision of the Treasurer of the City of Pittsburgh, collector of the tax for the city and the school district, was that no change would be made in the assessments.

For a better understanding of this case, certain other facts are detailed as follows:

All of the capital stock of Eastern Order Buying Company is owned by Producers Livestock Association, a corporation having its principal office in Columbus, Ohio. All of the capital stock of Eastern Order Buyers, Inc., is owned equally by Producers Livestock Association, the Ohio corporation above, and Producers Marketing Association, Inc., a corporation having its principal office in Indianapolis, Ind. The control of the subsidiary cooperative associations by their parent associations is provided for by their respective bylaws and in conformity with the laws regulating such enterprises. Both Producers Livestock Association and Producers Marketing Association, Inc., are nonprofit cooperative agricultural associations, with membership limited to producers of livestock and cooperative marketing associations. The two appellants are instrumentalities through which Producers Livestock Association and Producers Marketing Association market livestock of their members. The two producers associations handle the marketing of cattle and hogs which can be done directly and immediately by them. However, where, for a number of reasons, a delay in the marketing for a period of days or when shipment of the livestock to a distant point is required to a market where a sale was solicited, the United States Department of Agriculture, under the Packers

and Stockyard Act. prohibits the producers association from doing its own marketing to avoid possibilities of unfair competition and price manipulation. Appellant associations were, therefore, created to permit extension of marketing facilities and to protect the member producers from the vagaries of a limited local market.

Under the Co-operative Agricultural Association Corporate Net Income Tax Act of May 23, 1945, P. L. 893, 72 PS §3420-21, appellants' annual excise tax of four percent of each dollar of the net income of the associations is collected in lieu of any other excise tax.

*No attempt was made by the City of Pittsburgh or the School District of the City of Pittsburgh to impose the mercantile tax on the two producers associations.*

In these appeals, appellants have posited a number of principles of law which, if resolved in their favor, would require us to sustain the appeals and dissolve the assessments against them. We believe that it is not necessary to analyze all of the principles proposed by the appellants to decide this case, and that upon consideration of three of them all question can be removed and the matter herein considered satisfactorily determined.

The first question under scrutiny is whether or not livestock is goods, wares and merchandise subject to the mercantile tax. This question we believe must be decided in the negative.

The tax in question is an excise tax imposed on goods, wares and merchandise. The subject of any tax and the meaning given to enumerated classes of property or persons within such tax provision is to be determined by the legislative intent. *Taxes are burdensome at best and traditionally our courts have resolved any ambiguity or uncertainty in the language or extension of coverage of a tax in favor of the taxpayer:* Breitinger v. Philadelphia, 363 Pa. 512, 70 A.

2d 640 (1950); Scranton v. O'Malley Mfg. Co., 341 Pa. 200, 19 A. 2d 269 (1940). Whether or not the phrase goods, wares and merchandise is sufficiently broad to cover livestock cannot be determined by examining the act itself. This does not mean that the legislative intent cannot be determined. In using the phrase without clarification, the legislature adopted the general meaning of the phrase within the framework of mercantile taxation and as the phrase has been interpreted by case law in this state or elsewhere.

Historically, the expression goods, wares and merchandise appears to have had its origin in the English statute of frauds. In Pennsylvania law, "goods, wares and merchandise" was given a distinct meaning at a very early date. They are distinguished from animate property which was considered chattel in Dowdel v. Hamm, 2 Watts 61, 63, 65 (1833). In Commonwealth v. Evans, 32 Pitts. L. J. (O. S.) 307, the Supreme Court said in a per curiam opinion in passing on an early mercantile act, the Act of April 22, 1846, P. L. 486:

"One who buys and sells livestock, such as horses and cattle, is not within the class contemplated by that act. Its reference to goods, wares, merchandise . . . *clearly excludes the idea of applying the act to livestock.*" (Italics supplied.)

Quoting Commonwealth v. Evans with favor, Orlady J. said in Commonwealth v. Robb, 14 Pa. Superior Ct. 597:

"One who buys and sells livestock such as horses and cattle, is not within the class contemplated by the act."

In a lower court decision, Commonwealth v. Fisher, 22 D. & C. 440 (1935), the court followed the decisions of Commonwealth v. Robb, supra, holding that the term "goods", "wares" and "merchandise" did not

apply to livestock. *Where the legislature uses the same language in a statute as in a prior cognate statute, which has been construed by the Supreme Court, the presumption is that such language is to be interpreted the same way as it was when the earlier statute was considered:* L. Nazareth Twp. Supervisors' Appeal, 341 Pa. 171, 19 A. 2d 92.

The legal interpretation of this phrase in Pennsylvania appears always to have been limited preponderantly to things involved in over-the-counter and warehouse transactions and which are inanimate in nature, being stored, sold and replaced in a continuous cycle of mercantile business. In an interpretation of the Bulk Sales Act of May 23, 1919, P. L. 262, the court held that the words "goods", "wares" and "merchandise" include commodities handled by merchants or dealers in the course of trade, not the unsold products of a manufacturer or a farmer's produce. Gitt v. Hoke, 301 Pa. 31.

In a further clarification of that same act and the same phrase, Justice Reno stated, at page 123 of Smith v. Munizza, 170 Pa. Superior Ct. 122:

"In the first place, the Act relates only to the sale of goods, wares and merchandise, that is, to tangible property, to mercantile goods and supplies, to goods or things which are kept for sale and which are constantly sold and replaced by other merchandise."

Black's Law Dictionary, fourth edition, defines goods, wares and merchandise as: "A general and comprehensive designation of such chattels as are ordinarily the subject of traffic and sale." This definition is as broad as it can be made and is less than helpful here. The word "goods" in the phrase is the important word under consideration here for of the three designations it is the one which would comprehend livestock within its meaning. Black's Law Dic-

tionary defines "goods and chattels" as a phrase of "general denomination of personal property, as distinguished from real property; the term 'chattels' having the effect of extending its scope to any objects of that nature which would not properly be included by the term 'goods' alone, e.g., living animals, emblements, and fruits ..." Without question some confusion exists throughout the law as to the precise connotation of the phrase "goods, wares and merchandise" and it may mean different things at different times according to the nature of the statute and subject involved. *However, we believe that the law in Pennsylvania has determined an interpretation of the phrase "goods, wares and merchandise" to exclude livestock.* The appellees would argue that since some of the judicial interpretations of the phrase "goods, wares and merchandise" are 100 years old, they are not valid today. If this be the case, our law has no continuity and its substance would be depleted. The cases cited by appellees for the proposition that a new meaning must be attached to this phrase because the Supreme Court construed the sale of liquor and malt and brewed beverages to be within the purview of the mercantile tax laws is without foundation, as liquor and malt and brewed beverages were never considered anything but goods, wares and merchandise, and the only question involved concerned whether or not sale of the same is a mercantile pursuit. The law, of course, is sufficiently broad to comprehend the sale of these commodities. *Further, where uncertainty of the meaning of the clause is deemed to exist it must be construed in favor of the taxpayer:* Philadelphia School District v. Frankford Grocery Co., 376 Pa. 542; Commonwealth v. Repplier Coal Co., 348 Pa. 372, 35 A. 2d 319; and if such doubt exists as to the meaning of the phrase, as appellees would seek to introduce here, it must be resolved in appellants' favor.

The second point made by appellants which we believe should be considered is whether or not appellants are exempt from the mercantile tax imposed by the local taxing bodies because they are cooperative agricultural associations subject to the Pennsylvania Cooperative Agricultural Association Net Income Tax Act. It is our belief that appellants are exempt.

The act mentioned above is the Act of May 23, 1945, P. L. 893, 72 PS §3420-21. The title of this act reads: "*An Act* To provide revenue for State purposes by imposing an excise tax on the net income of co-operative agricultural associations having capital stock, *in lieu of all other taxes, except tax on real estate;* . . . (Italics supplied.)

The title is part of a statute or ordinance and, as such, must be considered in construing the enactment: Sterling v. Philadelphia, 378 Pa. 538 (1954), 106 A. 2d 793; City Stores Co. v. Philadelphia, 376 Pa. 482 (1954), 103 A. 2d 664. From the title of this act, it is obvious that cooperative associations were exempted from any state or local tax other than real estate tax. The text or body of the act comports with the intent expressed in the title, as follows:

"Section 3. Imposition of Tax—Every association shall be subject to, and shall pay for, the privilege of doing business in this Commonwealth, or having capital or property employed or used in the Commonwealth, by, or in the name of itself, or any other person, partnership or association, a State excise tax at the rate of four per centum (4%) per annum upon each dollar of the net income, *which tax shall be collected in lieu of any other excise tax.* . . . The property shall be free from any county tax excepting tax on real estate." (Italics supplied.)

The body of the act is more specific than the title in that it designates the tax to be paid as an excise tax

and applies the exemption to any other excise tax, but it is no less clear that the legislature intended to limit the tax on cooperative associations to this tax. *The reason for this exemption is clear as the farmer and agricultural producer has always been favored in our taxing policies out of the need to insure unfettered development of agriculture and the sensitive position of the farmer in our economy.* Indeed, these policies are to some extent responsible for our abundant provisions while the governments of other nations request their citizens to do without or to eat horsemeat. We cannot agree with appellees that the subsequent enactments of the tax anything act invalidated or repealed the Act of 1945.

Two rules of statutory construction favor sustaining the current validity of the Act of May 23, 1945, supra. Laws in pari materia shall be construed together, if possible, as one law. *Statutes are to be construed in harmony with the existing law and as part of a general and uniform system of jurisprudence.* First National Bank of Millville v. Horwatt, 192 Pa. Superior Ct. 581 (1960), 162 A. 2d 60. The Act of June 25, 1947, supra, which empowered the City of Pittsburgh to impose the mercantile tax, prohibits the local authorities "to levy, assess and collect . . . taxes . . . on a privilege, transaction, subject, occupation or personal property which is now or does hereinafter become subject to a State tax or license fee." The express clear intent of the legislature is not to violate the provisions of the Act of May 23, 1945, supra. The two acts read in perfect harmony with each other, and there is no repudiation of the earlier by the later.

The second rule of construction which appears applicable is whenever a general provision in a law shall be in conflict with a special provision in the name of another law, the two shall be construed, if possible, so

that effect may be given to both. If the conflict between the two provisions are irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the legislature that such general provision shall prevail: Act of May 28, 1937, P. L. 1019, 46 PS §563.

*Here, the 1945 Act taxing cooperatives was very specific in its exemption and application, whereas the mercantile tax laws of 1947 were very broad and general.* It does not appear to be the manifest intent of the legislature that the general provisions of the tax anything acts are to prevail to the extent of repealing all exempt classes. While the enactment as to the powers of school districts to tax is silent concerning a prohibition against local authority taxing a privilege, transaction, subject, occupation or personal property which is or shall become subject to the same State tax, no conflict with the prior 1945 Agricultural Tax Act is evident and effect may be given to both laws without doing harm to either. Repeals by implication are not favored and will not be implied unless there is an irreconcilable conflict between statutes embracing the same subject matter. First National Bank of Millville v. Horwatt, supra; George v. Moore, 394 Pa. 419 (1959), 147 A. 2d 148. *There must be an irreconcilable repugnancy between the provisions embracing the same subject matter* (Parisi v. Philadelphia Zoning Board of Adjustment, 393 Pa. 458 (1958), 143 A. 2d 360), and if two acts can stand consistently together, the subsequent act does not repeal the prior one: Milford Township Appeal, 389 Pa. 135, 132 A. 2d 214. *To hold otherwise would be to permit a local taxing authority to invade a subject for taxation which the State reserved for itself and necessary for the maintenance of the State Government.*

The third and probably most decisive aspect of this case is the status of plaintiffs in relation to the livestock producers with whom they deal. Both the Act of June 25, 1947, P. L. 1145, 53 PS §6851, which empowers the City of Pittsburgh to levy its mercantile tax, and the Act of June 20, 1947, P. L. 745, 24 PS §582.1, which authorizes the School District of the City of Pittsburgh to levy its mercantile tax, exempt articles grown or produced by the farmer. No question has been raised throughout this case that livestock are not the growth or produce of farmers.

The issue would not have been raised, and presumably plaintiffs would not have been assessed by the taxing bodies had the sales of the livestock been handled directly by the parent corporations. Producers Livestock Association and Producers Marketing Association deal directly with the farmer or the cooperative associations in accepting cattle and marketing them for the farmer, thereby acting as agent for the farmer, bring the transactions within the classification of those who vend articles of their own "growth" or "produce" and, therefore, tax exempt. We believe that unless the appellants are subsidiaries in the true sense of the word and not mere agents of the parent corporation or the farmers, they may not be subjected to the mercantile tax. If appellants are agents of Producers, they are not liable for the tax, as the settled principles of agency require the principal to assume the liability for the tax. In deciding whether either "to pierce the corporate veil" or to regard the subsidiary as an agent in order to hold the parent corporation, the following are the criteria most frequently emphasized: Degree of financial ownership; extent of actual domination of subsidiary's affairs in practice; whether the subsidiary was organized by the parent or taken over as a going concern; whether the subsidiary is undercapitalized or has its earning drained

off so as to keep it in a state of financial dependency; whether the formalities of legal separation are observed—separate books, bank accounts, directors meetings, etc.; whether property, business and employes are commingled, and whether the subsidiary's policies are directed to its own interests primarily or those of the parent: Stevens and Larson—Cases on Corporations, 2nd ed., p. 67. From the record in this case, the following facts appear:

1. All of the capital stock of Eastern Order Buying Co. is owned by Producers Livestock Association, a cooperative association. All of the capital stock of Eastern Order Buyers, Inc., is owned equally by Producers Livestock Association and Producers Marketing Association, likewise a cooperative association.

2. Eastern Order Buying Co. acts as an instrumentality through which Producers Livestock Association markets the livestock of its members who are farmers and other cooperative associations. Eastern Order Buyers, Inc., acts as an instrumentality through which both Producers Livestock Association and Producers Marketing Association market the livestock of their members.

3. The farmers bring their livestock to the two Producers Associations' alleys or enclosures at Herrs Island, Pittsburgh.

4. Producers Livestock Association establishes the price for livestock at the beginning of each day's business. Buyers who are ready to meet the established price purchase the livestock immediately from Producers and the farmer is given a check for the process, less service and yardage charges.

5. If no buyer is available, or buyers do not meet the established price, or should the farmer bring his livestock to market on a day other than the weekly auction day, the livestock will be held for a more favor-

able time or for shipment to another market area. Under such circumstances livestock must be handled by Eastern Order Buying Company and Eastern Order Buyers, Inc., to remain within the provisions of the Packers and Stockyards Act.

6. *When the two subsidiaries are used, Producers themselves pay the farmer the market price for that day, less service charges, after which the Producers Association transfer naked legal title to the livestock to the appropriate subsidiary, Eastern Order Buying Co. if the livestock is sheep, cattle, calves, etc., and Eastern Order Buyers, Inc., if the livestock is hogs. The subsidiary pays nothing to Producers.*

7. When either of the subsidiaries completes the sale to a third party, it renders a bill to the purchaser on its own invoice *but upon receiving payment it endorses the check or otherwise turns the proceeds over to the Producers Associations, which deposit such funds in their own bank account.*

8. Although separate records are kept of the transactions by each of the two subsidiaries, no money is remitted to either of them and neither has a bank account of its own. Funds received by the two subsidiaries are paid over to Producers which commingle them with their other funds making up their earnings, which earnings *are annually distributed to the farmer members.*

9. Neither Eastern Order Buying Co. nor Eastern Order Buyers, Inc., has any employees and all services performed by them are performed by the employees of the Producers Association, said employees being paid by Producers.

10. All representations to the public are made in the name of Producers and Producers assume the risk of loss on livestock sold by Eastern Order Buying Co.

or Eastern Order Buyers, Inc., and when Eastern Order Buying Co. and Eastern Order Buyers, Inc., sell on credit, Producers assume the risk of noncollectability.

11. *The sole purpose for creation of the two subsidiaries is to give farmers price stability in the market place by making available distant livestock markets or better timing of sales, which the parent associations are prevented from doing by Federal controls.*

Relating the facts to the criteria recited above, it becomes abundantly clear that the alter ego of the two subsidiaries are the parent corporations and in actuality there are few indicia of separate existence. It is obvious that no corporate veil exists for the purpose of protecting the parent associations from the liabilities and wrongdoings of the subsidiaries. The two subsidiaries are much less the agents of the two Producers Associations than they are extensions of them. The parents incur all obligations, expenses and losses, receive all the profits, control and establish the prices, maintain most of the records and all of the bank accounts, and in every way regulate and control the subsidiaries. Under such circumstances we are of the opinion that the agency concept may be disregarded and that the parents and their subsidiaries perform the same function and have the same relationship to the farmer either identically or jointly. Nothing in the laws of the states of incorporation, our own laws in regard to cooperative agricultural associations, or the by laws of the associations herein considered, prevent such arrangements. *As these associations are dealing as agents of the farmers in the selling of the product of his own growth, which transactions are exempt by reason of the enabling acts under which the mercantile taxes were enacted, they are not subject*

*to the mercantile tax:* Jones v. Pittsburgh, 176 Pa. Superior Ct. 154 (1954) ; Jefferson Grocery Co. v. Pittsburgh School District, 394 Pa. 110 (1958). The Jefferson decision, supra, recognized the agency principle in the operation of cooperative marketing associations, which had been applied by the Supreme Court in Philadelphia School District v. Frankford Grocery . Co., 376 Pa. 542 (1959). *The law, as applied, would prevent the cooperative associations from being taxed even though the farmer's product was not tax exempt.* Since the farmers may not be taxed on products of their growth, there can be no question that the appellants here, acting as their marketing agent, could not be assessed on those products.

### Order

And now, September 1, 1961, in accordance with the opinion filed at No. A1347 of 1960, the appeal of the taxpayer in the above case is hereby sustained.