### Unity-Frankford Rack Service, Inc. *v.* Commonwealth.

Argued March 2, 1971, before President Judge Bow-
man and Judges Crumlish, Jr., Kramer, Wilkinson,
Jr., Manderino, Mencer and Rogers.

*Paul W. Lunkenheimer,* with him *Schumacker &
Lunkenheimer,* for appellant.

*Edward T. Baker,* Deputy Attorney General, with
him *J. Shane Creamer,* Attorney General, for appellee.

OPINION BY JUDGE MANDERINO, September 20, 1971:

The question in this appeal is the proper valuation of the capital stock of Unity-Frankford Rack Service, Inc. (Unity), organized under the Business Corporation Law of Pennsylvania. Unity filed a capital stock tax report for the fiscal year ending June 29, 1968, which valued its capital stock at $125,000. The Commonwealth refused to accept Unity's valuation and revalued the worth of Unity's capital stock at $200,000, resulting in a claim for additional tax of $450. Unity appealed the Commonwealth's valuation through proper administrative channels and then to the Court of Common Pleas of Dauphin County. The appeal was transferred to this court pursuant to the Commonwealth Court Act (Act of January 6, 1970, P. L.    , Act No. 185, 17 P.S. 211.1 et seq.)

The value of $125,000 placed by Unity upon its capital stock should be accepted unless the Commonwealth is able to show that the actual value of Unity's capital stock is other than the amount declared by Unity. *Commonwealth v. Gimbel Bros.*, 18 Dauph. 385 (1915), *Commonwealth v. Sykes Bros., Inc.*, 53 Dauph. 26 (1942).

Section One of the Capital Stock Tax Act (Act 1889, June 1, P. L. 420, §21, as amended, 72 P.S. 1871) provides that a tax shall be paid ". . . on each dollar of the actual value of its whole capital stock. . . ." Section 20 of the Capital Stock Act (*supra*, 72 P.S. 1902) provides that the officers of the corporation shall file a report under oath stating the valuation and appraisal of the capital stock. The officers of the Company are to make their valuation under Section 20, for the ". . . actual value in cash as it existed at the close of the year for which report is made; . . . ."

Section 20 further provides that the officers, in declaring the actual value in cash are to take into consid-

eration basically three factors: ". . . first, the average which said stock sold for during the year; and second, the price or value indicated or measured by net earnings or by the amount of profit made and either declared in dividends, expended in betterments, or carried into the surplus or sinking fund; and third, the actual value indicated or measured by consideration of the intrinsic value of its tangible property and assets, and of the value of its good will and franchises and privileges, as indicated by the material results of their exercise, taking also into consideration the amount of its indebtedness. . . ." (72 P.S. 1902).

Unity functions as an economic cooperative. It is a wholly owned subsidiary of the Frankford-Quaker Grocery Company (Frankford), another Pennsylvania business corporation which also functions as an economic cooperative. The entire capital stock of Frankford is owned by retail grocers who are members of that cooperative. Frankford purchases, warehouses and distributes grocery items to its retail grocer members. Stock in Frankford may only be owned and purchased by retail grocers. Unity was organized for the corporate purpose of purchasing, warehousing, and distributing health and beauty aids to its retail grocer members.

A retail grocer may apply for membership in either or both cooperatives by an application and contract. Shares of stock in Frankford with a par value of $100 per share are purchased by the grocer member in a quantity the value of which is intended to equal approximately three times the average weekly "price" of merchandise the grocer wishes the cooperative to purchase for his weekly merchandise withdrawals. The shares of stock are then assigned to the cooperative as security for any amount which may become due in the future. The grocer member then pays a weekly "price" for all items he withdraws from the cooperative. This

"price" is determined by estimating all of the cooperative's costs plus "reasonable reserves" for the cooperative. Unity's bylaws also provide that any amount over costs of the weekly "prices" paid to the cooperative by the grocer members, including the reserve, shall be refunded to the members in proportion to their withdrawals of merchandise.

During the fiscal year 1968, Unity, in accordance with its bylaws, refunded to its grocer members $63,325, the sum representing an excess of the amount, including the reserves, over the cooperative's costs. The amount held back in the reserve fund was $41,384. The average retention for reserves for five years was $23,311. All of Unity-Frankford's capital stock at the end of 1968 had a net book value of $151,611. The assets comprising this value consisted of cash, accounts receivable, trucks, display racks and inventory.

In declaring the value of its capital stock for the fiscal year 1968, Unity did not consider the "reasonable reserves" as earnings or profits. Unity considered only the "intrinsic value of its tangible property and assets." Its asset book value of $151,611 was reduced to an actual value of $125,000 because of the depreciated value of many display racks which were permanent fixtures in the stores of grocer members. Unity and the Commonwealth both agree that there are no stock sales to be considered in the valuation of Unity's capital stock.

When the Commonwealth resettled Unity's capital stock tax it considered the reserve fund of $41,384, retained by Unity in 1968, as current earnings. It also considered the average of retained reserve funds for the last five years ($23,311) as average earnings. As is customary, the Commonwealth then capitalized both average and current earnings at 10%. *Commonwealth v. Rosenbloom Finance Corporation*, 91 Dauph. 359

(1969). The net book value of $151,611 was then added to the capitalized earnings and that sum divided by three to reach a figure at which the Commonwealth could easily support a capital stock valuation of $200,-000.

The principal question on this appeal concerns the amount of $41,384 in cash which Unity had at the end of its fiscal year but did not consider in the valuation of its capital stock. The Commonwealth contends that this money was obtained by Unity as net earnings (or profits) during the year. Unity maintains that the money does not constitute earnings. The source of the $41,384, is the key to the matter.

Unity contends that it has neither current nor average earnings of any sort, since, by its very nature as an economic cooperative, it is not engaged in business to make a profit. The purpose of Unity and Frankford is essentially the same. The articles and bylaws of Frankford provide: "The purpose for which this company is organized and incorporated is to act as a purely co-operative enterprise of retail grocers in the purchasing and warehousing of food and merchandise for its retail-grocer shareholders and distribute said food and merchandise to them on their respective orders."

The purpose of Unity is set forth in its articles of incorporation as follows: "To act as a co-operative enterprise of retail grocers in the purchasing and warehousing of merchandise for its retail-grocer shareholder-owners and to distribute said merchandise to them on their respective orders and to serve and assist said retail grocers in the display, advertising, and promotion of sale by said retail grocers of such mechandise."

Unity's bylaws also speak of the purpose of Unity. The bylaws state: "The purpose for which this company is organized and incorporated is to act as a purely cooperative enterprise of retail grocers in the pur-

chasing and warehousing of the merchandise for its retail grocer owners and to distribute said merchandise to them on their respective orders and to serve and assist them in the display, advertising and promotion of sale of such merchandise."

The substance, rather than the form, of the structure and operation of Frankford, which is the same as Unity, was thoroughly analyzed in *School District of Philadelphia v. Frankford Grocery Company*, 376 Pa. 542, 103 A. 2d 738 (1954). In that case, the question arose under the gross receipts tax of the School District of Philadelphia. The court in *School District of Philadelphia, supra,* decided that the payments made weekly by members when merchandise was withdrawn were not receipts of a "business conducted for gain or profit". Although the Commonwealth's capital stock tax and the School District of Philadelphia's gross receipt tax are not the same, the court's analysis in that case of the true substance, rather than form, of the "cooperative" structure and operations is relevant. The court said: "The matter therefore reduces itself to the question whether the defendant in its cooperative functioning is carrying on the business for gain or profit . . . while it is true that the defendant conducts its operations as a corporation, which is the tendency of most cooperative associations today, it possesses all the attributes of a purchasing cooperative. In their present form and mode of operation, purchasing cooperatives are of a comparative recent origin and, like all cooperatives, they are somewhat of a hybrid, partaking both of the nature of a corporation and of a partnership. But basically a purchasing cooperative acts as the joint agent of all its member principals in purchasing in bulk and distributing at cost the products sold by its members. That it also acts as such agent in supplying at cost equipment and services incidental to and in furtherance

of the economic objectives of its principals, does not change its character. By means of this principal of unified action the merchants secure the advantages of quantity buying, eliminate wholesalers' profits and obtain a position where they can compete on even terms with the giant grocery chains. Viewing the defendant as an enterprise separate and distinct from its members, it has what superficially resembles a profit, that is, an excess of receipts over cost of operation. Realistically, however, the apparent profit is due entirely to the fact that each cooperator has paid in more than enough to cover the cost of the products he obtains for himself. . . .

"The defendant has no independent profit motive or interest in any of the monies it receives from its retail grocer members covering the cooperators withdrawal of merchandise. . . ." 376 Pa. 542, 103 A. 2d 738, 741-43 (1954).

The court in the *School District of Philadelphia* case concluded that Frankford, "in its cooperative functioning is not conducting an independent business separate and apart from its constituent members, and its receipts from them in payment for their withdrawal of merchandise purchased for their account, are not taxable." 376 Pa. 542, 103 A. 2d 738, 743 (1954).

Although the court in *School District of Philadelphia, supra,* was considering whether the members' payments constituted gross receipts, the analysis of the substance rather than the form of the structure and operation of Frankford is most revealing. In this case, the structure and operation of Unity is essentially identical to that of Frankford. It is the wholly owned subsidiary of Frankford, operating in the same manner as the parent.

A grocer member, as was pointed out in the *School District of Philadelphia* case, *supra,* has no interest in-

dependent of the corporation (cooperative). The source of the monies which the corporation has are the stockholders themselves. These monies retained by the corporation from the members themselves who own the corporation are not earnings or profit.

The reasonableness of capitalizing earnings or profits in order to arrive at a valuation of the capital stock of a corporation is based upon the valid assumption that the stock of a company may have an increased value if the company can earn or make a profit regardless of its book value or the actual value of its tangible and intangible assets. The value of a share of stock is affected because the owner of such a share has a prospect in the future that the earnings or profitability annually of the company will result in an appreciated value of the stock. The owner of the stock will thus realize an increased value if the earnings result and the prospect of earnings continue. The grocer members of Unity do not "gain" any appreciated value in their shares. Their shares have an appreciated value because of their own contributions.

Because the retained reserves give an appreciated value to the stock, the retained reserve monies should be taken into consideration in arriving at valuation of Unity's capital stock under the third factor listed in Section 20 of the Capital Stock Tax Act (72 P.S. 1902). That section provides that the officers of the corporation, in declaring the actual value of their capital stock, should consider, aside from the earnings and profit, the actual value ". . . indicated or measured by consideration of the intrinsic value of its tangible property and assets, . . . ." We think that under this consideration the amount of $41,384 should clearly be included in the valuation of the capital stock of Unity. Unity declared a valuation of $125,000 and did not include the $41,384 in this valuation. There is no question that

Unity did have this asset on hand at the end of the fiscal year. These monies are monies which Unity received from its members. Under the charter and bylaws of Unity, the members do not have a debtor-creditor relationship so far as these funds are concerned. The value of a share of stock of Unity is therefore increased to the extent that this asset is owned by Unity. The monies are an asset of Unity without any encumbrance, just the same as its merchandise and fixtures are an asset. There appears to be no restriction on Unity so far as these funds are concerned, so long as they are used for corporate purposes.

The assets of Unity, at the close of its fiscal year ending June 29, 1968, were, in addition to the declared $125,000, the $41,384 which constituted an asset of the corporation. There should therefore be added to the declared value of $125,000 the amount of $41,384. The proper valuation for the capital stock of Unity is thus, $166,384.

The Commonwealth's valuation was $200,000, and on this appeal the Commonwealth has contended that the valuation can properly be raised to $265,000. We can find no proper basis for raising the valuation to the amount of $265,000 nor any basis for sustaining the valuation of the stock above $166,384.

The arguments presented by the Commonwealth, aside from the amount of $41,384 discussed above, involved the following matters. The Commonwealth argues that at the beginning of the fiscal year Unity had a debt to the parent, Frankford, in the amount of $162,000 and did not have this debt at the end of the year. This alone, according to the Commonwealth, is sufficient to add valuation to the capital stock because a company must have had earnings in order to pay off a $162,000 debt. We do not agree because the evidence clearly indicates the nature of the $162,000 debt and

how it was paid before the end of the fiscal year. There are no secret earnings. Unity, during the year, advances large sums of monies to members opening new stores. This money is borrowed from the parent, Frankford. When Unity is repaid, it in turn repays Frankford, thus resulting in a huge debt reduction on Unity's part. Unity is, in effect, the middleman between the parent and the member. Unity does not repay the large debt to Frankford out of any source other than monies received from the member who was advanced large sums of money or merchandise in order to open a new store. We fail to see how this can be considered a proper item in the valuation of the capital stock.

The Commonwealth also points to the refunds by Unity to its members at the end of the year which represented excess payments. What was said above concerning the amount of $41,384 is equally applicable to the approximately $63,000 which was returned to the members. As the Supreme Court said in the *School District of Philadelphia* case, *supra,* ". . . when a group of individuals enter into an agreement to pool their resources for a common purpose and state therein that their contributions to the extent not required for that purpose shall be repaid to them, it is hard to conceive how the contributions returned to them should be regarded as a gain or profit to the entity acting as their mutual agent. . . ." 376 Pa. 542, 103 A. 2d 738, 742 (1954).

Under the capital stock tax, refunds may be considered in the valuation of capital stock if such refunds are dividends and are declared from earnings or profits. The refunds to the members did not constitute earnings or profit any more than the retained reserves constituted earnings or profits.

The last item to be considered is the Commonwealth's refusal to accept Unity's $125,000 valuation of

its assets (other than the $41,384). The Commonwealth presented no evidence that the depreciated value of Unity's display racks was unreasonable or improper. On the contrary, the evidence sustained Unity's depreciated value. We must accept the taxpayer's declared valuation in the absence of any Commonwealth evidence that it is not the actual value. *Commonwealth v. Gimbel Bros., supra, Commonwealth v. Sykes Bros., Inc., supra.*

The Commonwealth has not established that the valuation and appraisal by the company's officers in the amount of $125,000 was in error, except that the amount of $41,384 is an asset of the corporation which should be included in computing the value of the capital stock.

The taxpayer's liability for its capital stock tax for the fiscal year ending June 29, 1968, is to be based upon a whole capital stock valuation of $166,384. The tax computed at the applicable rate of six mills will be $998.30. Since Unity has already paid $750.00 of the tax, based on its valuation of $125,000 of its capital stock, an additional $248.30 is due the Commonwealth.

Accordingly, we make the following

## ORDER

Now, September 20, 1971, the appeal of Unity-Frankford Rack Service, Inc. is sustained in part and dismissed in part and, unless exceptions be filed to this Order within thirty (30) days hereof, it is directed that judgment be and is hereby entered in favor of the Commonwealth and against Unity-Frankford Rack Service, Inc. in the sum of $248.30 with interest at the rate of six per cent (6%) per annum from due date of return, being the amount of appellant's capital stock tax for the year ending June 29, 1968 herein found to be due less the amount heretofore reported and paid by appellant.