## ASSOCIATED PIPE LINE CO. v. UNITED STATES. *

(Circuit Court of Appeals, Ninth Circuit. May 19, 1919.)

### No. 3251.

1. INTERNAL REVENUE ⚫9—CORPORATION EXCISE TAX—"DOING BUSINESS FOR PROFIT."

A pipe line company organized by, and doing business only for, two other pipe line corporations, *held* not merely a convenient agent of these corporations, but to be doing business for profit within Corporation Tax Law.

2. INTERNAL REVENUE ⚫7—INCOME—CORPORATION TAX LAW—INTEREST DEDUCTION.

Under Corporation Tax Law of August 5, 1909, providing that interest paid on indebtedness not exceeding paid-up capital stock may be deducted in estimating net income, moneys paid a pipe line corporation by its stockholders *held* not payment for capital stock, but advances to corporation, and corporation, having no paid-up stock, could not deduct interest on such advances in calculating net income.

3. INTERNAL REVENUE ⚫28—CORPORATION TAX LAW—ADMISSIBILITY OF EVIDENCE.

A statement made by a corporation's auditor to an internal revenue tax agent that the corporation had no paid-up capital stock is admissible in proceedings to recover taxes under Corporation Tax Law of August 5, 1909.

In Error to the District Court of the United States for the Second Division of the Northern District of California; William C. Van Fleet, Judge.

Action by the United States against the Associated Pipe Line Company. Judgment for the United States, and defendant brings error. Affirmed.

Action by the United States against the Associated Pipe Line Company, a California corporation, to recover $1,423.56 for excise taxes for 1909, assessed under subsection 1 of section 38 of the Act of Congress of August 5, 1909, the Corporation Tax Law, 36 Stat. 111, 112, c. 6. The United States recovered judgment. Among other things the act provides: "That every corporation * * * organized for profit and having a capital stock represented by shares * * * and engaged in business * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation * * * equivalent to one per centum upon the entire net income over and above $5,000 received by it from all sources during such year. * * * Such net income shall be ascertained by deducting from the gross amount of the income of such corporation * * * received within the year from all sources, * * * (third) interest actually paid within the year on its bonded or other indebtedness to an amount of such bonded and other indebtedness not exceeding the paid-up capital stock of such corporation * * * outstanding at the close of the year." The defendant below denied that it is a corporation organized for profit, and alleged that it never has and never could earn any profits; that it never had any net income and has no income; that its income never exceeded its expenses of maintenance and operation; that its income was derived solely from stockholders; and that the stockholders have always severally paid all excise and income taxes assessed against them respectively by the United States.

The facts found by the District Court and as agreed upon are, in substance, as follows: The Associated Oil Company was incorporated in 1901, and the Kern Trading & Oil Company was incorporated in 1903. The Associated Oil Company has always been a purchaser, producer, and seller of crude petroleum and its products, and the Kern Company has been an agent of the Southern Pacific Company, a railroad carrier, for the purpose of developing, handling, and furnishing to the Southern Pacific Company fuel oil for its locomo-

*Rehearing denied October 14, 1919.

tive engines engaged in interstate and intrastate commerce. In 1907, these companies made an agreement containing the following matters: The Kern Company was then the owner of and operating a pipe line, together with pumping stations, tanks, and appurtenances, between Volcan and Delano, in California, about 31 miles; the pipe line being laid on the right of way of the Southern Pacific Company. The Associated Company and the Kern Company proposed to extend this pipe line from Delano to Port Costa along the right of way of the Southern Pacific Company between Delano and Goshen, and Fresno and Port Costa, and on the right of way of the Central Pacific Railway Company between Goshen and Fresno; the said line from Volcan to Delano and from Delano to Port Costa to be owned by a corporation in which the Associated Company and the Kern Company should be equally interested. It was agreed that a California corporation should be created to own, lease, and operate pipe lines, but not as a common carrier, for the transportation and movement of oil, etc., to be named Associated Pipe Line Company, with a capital of $7,000,000, or of 70,000 shares of $100 each. Directors were to be selected by each of the parties to the agreement. A president and superintendent were to be agreed upon. The Associated Pipe Line Company was to have vested in it, by purchase from the Kern Company at actual cost, the ownership of the pipe line, stations, tanks, and appurtenances between Volcan and Delano. The pipe line company was to construct and own the extension of the pipe line from Delano to Port Costa, together with stations and appurtenances, and might construct and own additional pipe lines that the parties desired jointly to build and operate.

It was agreed that the cost of the pipe lines, tanks, and appurtenances between Delano and Port Costa and all expenses of construction should be advanced by the Kern Company. The Associated Oil Company agreed that it would pay the Kern Company one-half of the entire total cost to it of the pipe lines, tanks, and appurtenances between Volcan and Port Costa within three years from the date of the agreement, and that on one-half of all the sums paid by the Kern Company, comprising such total cost, the Associated Oil Company would agree to pay interest. One-half of the entire capital stock of the Associated Pipe Line Company was to be issued to the Kern Company, and one-half to the Associated Oil Company. Expenses for repairing, operating, and maintaining were to be divided monthly between the Associated and Kern Companies in proportion to the amount of oil moved for either party to tidewater or intermediate points. Betterments and improvements, together with taxes and assessments upon the property of the Associated Pipe Line Company, were to be apportioned between the Associated Oil Company and the Kern Company. The pipe lines were to be exclusively used for the movement of oil belonging to the Associated and Kern Companies. They were so used, and the Associated Pipe Line Company has never been engaged in any business other than that of transporting oil through such pipe lines for the two above-named companies.

The Associated Pipe Line Company, plaintiff in error here, was incorporated in 1907, pursuant to the agreement just referred to, and the stock subscribed as follows: Calvin, 34,980 shares; W. F. Herrin, 10 shares; George L. King, 10 shares; W. S. Porter, 34,990; Buck, 10 shares. On August 27, 1907, the capital stock was issued to the nominees of Associated Oil Company and Kern Trading & Oil Company as subscribed for. In February, 1910, 34,980 out of the 34,990 shares issued to Porter were transferred to the Associated Oil Company, and on July 17, 1913, 34,970 of the 34,980 shares issued to Calvin were transferred to the Kern Company, while 20 shares remained with Calvin and Porter and their successors, as directors, and 30 shares remained in Herrin, King, and Buck, as directors, and the Kern Company and the Associated Company were the owners of the entire capital stock in equal proportions, except 50 shares held by the five directors; each director holding 10 shares. The purposes of the incorporation of the Associated Pipe Line Company were: "The acquisition, construction, owning, maintenance and operation, but not as a common carrier, of pipe line for transportation of oil within the state of California, together with necessary pumping stations therefor."

258 F.—51

Pursuant to the agreement of April, 1907, the pipe lines, tanks, and appurtenances between Volcan and Delano were conveyed to Associated Pipe Line Company after the organization thereof, and that company constructed an extension of the pipe line from Delano to Port Costa, together with stations and appurtenances, and also an additional pipe line from Maricopa to Port Costa. The Kern Company advanced the costs of construction between Delano and Port Costa and half the cost of the additional line from Maricopa to Port Costa, and the Associated Oil Company advanced the other half of the cost of the last-mentioned line.

Up to December 31, 1909, the Kern Company had advanced $4,978,401 for cost of the pipe line between Volcan and Delano and for cost of construction of extension lines from Delano to Port Costa; and on December 31, 1909, one-half of the sum so advanced by the Kern Company was owing to it by the Associated Oil Company, together with interest in the sum of $149,352. For convenience the account of such advances and interest was carried on the books of the Associated Pipe Line Company. The necessary expenses of maintenance and operation for 1909, inclusive of the sum of $149,352, was $674,232.23, which sum, together with $99,542.58 depreciation charged on the books of the Associated Pipe Line Company for 1909, made a total of $773,-774.81, which was charged by the Associated Pipe Line Company against the Kern Company and the Associated Oil Company for 1909, and was reported by the Associated Pipe Line Company to the United States as its gross income for 1909. The return made for that year also showed: "Total amount of paid-up capital stock at close of year, not adjusted." It showed no net income for 1909 and no tax payable by the Associated Pipe Line Company for 1909 under the act of August 5, 1909. The Commissioner of Internal Revenue disallowed the interest charge of $149,352, and, after deducting $5,-000 allowed by the provision of the act of Congress, assessed the Associated Pipe Line Company a special excise tax of 1 per cent. on the balance of $144,-352, amounting to $1,443.52, which the Associated Pipe Line Company paid under protest. Claim for refund was made in 1912 and was allowed on August 13, 1912, but in December, 1915, the commissioner concluded that he had erred in the refund for the reason that the Associated Pipe Line Company had no paid-up capital stock in 1909 on which to base a legal right for the deduction of interest, and after correction of the figures he demanded payment of $1,423.56. The Associated Pipe Line Company has never declared or paid any dividends on its stock, and the finding is that none of the capital stock of the Associated Pipe Line Company was paid until December 31, 1911.

Edmund Tauszky, of San Francisco, Cal., for plaintiff in error.

Annette Abbott Adams, U. S. Atty., and Frank M. Silva, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). The main points urged by plaintiff in error are: That the Associated Pipe Line Company is not a corporation organized for profit; that it is not carrying on or doing business within the meaning of the Corporation Tax Law; that the plaintiff in error had no net income during the year 1909 and was entitled to deduct from its gross income interest paid by it.

[1] We cannot uphold the argument that the agreement between the companies had the effect of making the Associated Pipe Line Company merely "the agent of Associated Oil Company and Kern Trading & Oil Company * * * as a convenient instrument for the construction, maintenance, and operation of pipe lines for the joint use of its owners," neither of which requires them for their entire length for the transportation of oil from oil fields. Corporate organi-

zation was to acquire, own, maintain, and operate pipe lines to transport oil within California, and the activities of the corporation harmonized with the avowed purposes of its creation. It had a large business of transporting oil through pipe lines; it paid the Kern Company for a line that had been constructed from Volcan to Delano; it constructed and operated a pipe line from Delano to Port Costa, the payment for which work was advanced by the Kern Company as the moneys were required. The advances, amounting to nearly $5,000,000, were credited to the Kern Company as cash on the books of the Associated Pipe Line Company, although not against its stock subscription. Subsequently an entry was made as of December 31, 1911, transferring the advances on the books of the company to the capital stock account.

The plaintiff in error also constructed another pipe line from Maricopa to Port Costa, commenced in October, 1908, and operated the line in the early part of 1910. That advances made in connection with the construction of these pipe lines were made in equal proportion by the Kern and the Associated Oil Companies is not of special moment, beyond the fact that on advances made by the two companies the interest charge, over which this controversy has arisen, accrued. It seems that each company was allowed interest from the date it made its advances up to the time of the adjustment of the respective advances. It is explained that when the return of annual net income for 1909, showing $149,352 interest on open accounts, was made, this was interest accruing on the amount advanced by the Kern Company for the line which was then in operation, while for the advances which had been made by the Associated Oil Company no interest was allowed in 1909 and none charged until the line was in operation. However the pipe line company carried, on its books, accounts for the Associated Oil Company and the Kern Company in which they were credited with their cash advances as they were made from time to time, and no entry was made in the books with regard to payment for the capital stock of $7,000,000 until December 31, 1911, at which date both lines had been constructed.

The secretary and auditor of the Associated Pipe Line Company testified that the motive for making the interest charge of $149,352 was to equalize the investment in the pipe line, the two companies being entitled to 50 per cent. usage each, and he described the Associated Pipe Line Company books as only "a clearing account," and the entry as "a mere matter of adjustment between the two owning companies to equalize the use of the capital investment," and said that the present practice was for the companies to make adjustments between themselves, and that, if the Associated Oil Company had used the pipe line 55 per cent. and the Southern Pacific 45 per cent., then the Associated Oil Company paid to that company its percentage on the 5 per cent. that it had used its line.

The return made by the Associated Pipe Line Company was as by a corporation organized for profit, and the return showed that it had accumulated money. It is hard to conceive that the formation of the corporation was had with a view other than the realization of profit.

It may be that the stockholders in the Associated Pipe Line Company took the profit away from the corporation, but it is clear that the way in which the money was made was by a corporate organization; and the corporation, having achieved the object of its creation, became subject to the imposition of the tax with respect to doing business. In Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 Sup. Ct. 201, 61 L. Ed. 460, a corporation was created "to unite in one ownership the undivided fractional interests of its various stockholders in lands," and to "own such property, and, for the convenience of its stockholders, to receive, and distribute to them," the proceeds of the disposition of such property at such times and in such amounts and in such a manner as determined by the board of directors. The Supreme Court found no difficulty in concluding that such a corporation was organized for profit and did not come within the exceptional character of charitable or eleemosynary corporations, and the court after examining the earlier corporation tax cases, held that the corporation was carrying on business and said:

"The fair test to be derived from a consideration of all of them [the cases] is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain, and such activities as are essential to those purposes."

The court emphasized the view that the Corporation Tax Law requires no particular amount of business in order to bring a company within its terms. The activities considered brought the corporation there in question within that line of the decisions which have held that such corporations were doing business in a corporate capacity within the meaning of the law. McCoach v. Mine Hill R. R. Co., 228 U. S. 295, 33 Sup. Ct. 419, 57 L. Ed. 842, illustrates the distinction. There a railroad corporation turned over its entire property under a lease to another company, and even ceased to exercise its power of eminent domain. It was held not to be engaged in business. The Associated Pipe Line Company appears to have been active, and to be maintaining its organization for the purposes for which it was created; it has expended and received money, has borrowed money, has constructed pipe lines, has allowed itself to be charged interest, has had dealings with its stock and stockholders concerning moneys received, and in 1909 was actually transporting oil and performing its corporate functions.

[2] We now inquire into net income during 1909. The company returned the total amount of paid-up capital stock outstanding at the close of year 1909 as "not adjusted," and the total amount of bonded or other indebtedness as "not adjusted," and the gross income as $773,-774.81. It deducted the total amount of ordinary and necessary expenses, including interest charge, $674,232.23, and depreciation, $99,-542.58; total deductions, $773,774.81; "net income nil." According to the findings, none of the capital stock of the corporation was paid until December 31, 1911. If we accept this finding as true, clearly the plaintiff in error in 1909 had no paid-up capital stock and was therefore

not in a position to include the interest charge in arriving at what its net income was.

It is argued that, although the moneys were not entered in the capital stock account on the pipe line company books until December, 1911, the fact was there was no net income by way of interest on advances because such advances were not made by plaintiff in error and the interest was not earned by or payable to the pipe line company, and that the pipe line company was merely the conduit through which the Associated Oil Company paid the Kern Company the interest on the advances by the Kern Company. We gather the contention to be that the fact was that when the pipe line company was created the Kern Company transferred to it the then-existing pipe line from Volcan to Delano, and agreed to advance the cost of constructing the extension from Delano to Port Costa, and that this was the consideration for the issuance of the stock of the pipe line company to the Associated and the Kern Companies; that construction was commenced in 1907 and the line operated in 1908; that up to December 31, 1909, the advances for cost of the line from Volcan to Delano, and of the extension from Delano to Port Costa, amounted to about $5,000,000 upon which interest for 1909 was $149,352; and that stock of the par value of this amount had therefore been paid for up to December 31, 1909.

But this reasoning seems to lead to the conclusion that the advances that were made were in payment of capital stock, and, if such is the correct view, there was a sale of stock and no indebtedness.

The plainer view seems to be that there was an indebtedness on account of advances, but that there was no paid-up capital stock at the time of the return, and therefore that, as a matter of law, no interest could be deducted.

[3] An income tax agent in the Internal Revenue Department testified, over the objection of the plaintiff in error, that in 1915, when he investigated the books of the pipe line company, he had a conversation with the auditor of the plaintiff in error, and that the auditor then stated to him that the capital stock of the corporation had not been paid up to December 31, 1909, when the tax in question was assessed, and that the matter had not been adjusted. The objection was based upon the ground that any statement by the auditor, unless authorized by the corporation through its board of directors, would not be binding upon the company.

We think that the ruling of the court was correct. Lane v. Boston & Albany R. R., 112 Mass. 463; Lynchburg Tel. Co. v. Booker, 103 Va. 594, 50 S. E. 148.

The judgment is affirmed.