## Tax Review Board, Appellant, *v.* Automatic Plating Company.

Argued October 7, 1966. Before Bell, C. J., Mus-
manno, Jones, Cohen, Eagen, O'Brien and Roberts,
JJ.

*Levy Anderson,* First Deputy City Solicitor, with him *Edward G. Bauer, Jr.,* City Solicitor, for Tax Review Board, appellant.

*John W. Frommer, Jr.,* with him *Dilworth, Paxson, Kalish, Kohn & Levy,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, November 15, 1966:

This appeal arises out of an assessment of Automatic Plating Company, appellee, by the City of Philadelphia for amounts alleged to have been due under the Philadelphia Mercantile License Tax. Philadelphia Code §19-1001. The assessment was sustained by the Philadelphia Tax Review Board and Automatic appealed to the Court of Common Pleas of Philadelphia County which reversed the Board and set aside the assessment. On appeal the Superior Court, being equally divided, affirmed. 206 Pa. Superior Ct. 751, 213 A. 2d 647 (1965). Because the facts and issues were substantially similar to those involved in *Shelburne Sportswear, Inc. v. Philadelphia,* 422 Pa. 199, 220 A. 2d 798 (1966), which was then before this Court, we allowed the petition of the City of Philadelphia for allocatur.

Automatic was organized along with two other corporations in 1952 by the partners of Dennis Mitchell Industries. The shares of stock of the three corporations were owned by the partners of Dennis Mitchell in the same proportion as their respective partnership interests. In 1956, Dennis Mitchell Industries was itself incorporated.

Prior to 1953 Dennis Mitchell was engaged in the manufacture and sale of household and juvenile specialties. In the process of such manufacturing, it did most of its own plating of the metal parts utilized in its products. In the latter part of 1952, Dennis Mitchell found that it had a plating capacity in excess of its

own needs and decided to seek outside business. For this purpose the partners organized the three corporations mentioned above. It was originally contemplated that Automatic would do the selling while her two sister corporations would do the actual plating, but after, a year's experience, the shareholders liquidated the other corporations. From 1953 until its own liquidation in 1960, Automatic, in addition to selling, performed the plating operations. During this period about 57% of Automatic's production was for Dennis Mitchell, the balance for outside customers. Automatic dealt directly with the outside customers, invoices were in the name of Automatic, and payments were received by Automatic.

Dennis Mitchell purchased and paid for materials, utility services, office, janitorial maintenance and some delivery services used by Automatic. These expenses were then charged to Automatic by Dennis Mitchell and Automatic would show these individual expense items on its books. However, the payroll and taxes directly connected with the plating operations were paid by Automatic. While Automatic was located in the same building as Dennis Mitchell, it occupied its own separate space and paid its own rent. At the end of a period, Dennis Mitchell and Automatic would offset the charges against each other and the balance would be paid by a check from one company to the other.

In *Shelburne* we held that sales between affiliates in the usual course of business are normally included in the tax base of the seller to measure the value of the franchise tax under Philadelphia Code §19-1001. Appellee argues that the receipts in question are not derived in the usual course of business but are simply accommodation sales between Automatic and Dennis Mitchell Industries, Inc., its affiliate. According to appellee the vital distinction between this case and *Shelburne* is that Shelburne Sportswear, Inc. did work

only for its affiliate whereas 43% of Automatic's work was done for nonaffiliates, the profits derived from this aspect of its business being taxable.

Nevertheless, by using Automatic to supply its necessary plating, Dennis Mitchell was able to obtain its plating without having to pay the ordinary markup. "[T]he effect of the arrangement was the diversion, by conscious choice on the part of [Automatic's] management, of profits which would otherwise have been realized in the normal course of appellee's operations. Such diversion does not entitle [Automatic] to claim that it was not engaged in a business for 'profit or gain' [of the 57% of its operations done for its affiliate at cost] within the meaning of the Mercantile License Tax, and, thus, to avoid the burden of taxation imposed by the City of Philadelphia for the privilege of engaging in business therein." *Shelburne Sportswear, Inc. v. Philadelphia,* 422 Pa. 199, 207-08, 220 A. 2d 798, 802 (1966).

The cases* relied upon by appellee are inapplicable for the same reasons that they were inapplicable in *Shelburne,* 422 Pa. at 208-09, 220 A. 2d at 802-03.

Accordingly, the decision of the court of common pleas may not stand and the order of the Superior Court is reversed.

---

\* *Ed McKean Oldsmobile Co. v. Pittsburgh,* 407 Pa. 106, 180 A. 2d 46 (1962) ; *Philadelphia School District v. Frankford Grocery,* 376 Pa. 542, 103 A. 2d 738 (1954) ; *H. J. Heinz Co. v. School District of Pittsburgh,* 170 Pa. Superior Ct. 441, 87 A. 2d 85 (1952).