B. Kenneth Simon, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued September 11, 1980, before Judges MEN-CER, ROGERS and WILLIAMS, JR., sitting as a panel of three.

*Michael A. Steger, Smiley and McGinty,* for petitioner.

*Paul S. Roeder,* Deputy Attorney General, for respondent.

OPINION BY JUDGE MENCER, December 9, 1980:

B. Kenneth Simon (petitioner) appeals from an order of the Board of Finance and Revenue which affirmed a decision of the Board of Appeals of the Department of Revenue denying petitioner's claim for a refund of sales tax. We affirm.

The facts are not disputed. On October 17, 1973, petitioner, who is president and sole shareholder of All-Pak, Inc. (All-Pak), contracted with the Burroughs Corporation (Burroughs) to purchase computer equipment for use by All-Pak. Petitioner paid a sales tax to Burroughs on this purchase. Upon the receipt of the computer equipment on or about July 1, 1974, petitioner entered into a lease-purchase agreement with All-Pak. In December of 1978, the Department of Revenue, pursuant to an audit, levied a use tax assessment against All-Pak upon this same equipment. All-Pak paid the use tax and, on January 17, 1979, petitioner filed a petition for a refund of the sales tax, pursuant to Section 256 of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7256. The refund was denied by the administrative hearing boards.

The Commonwealth admits that petitioner could not properly be assessed for the sales tax, since his purchase would be exempted as either (1) a resale under Section 201(i) of the Code, 72 P.S. §7201(i); (2) a purchase of equipment for the purpose of renting to others or an isolated sale under Section 204 of the Code, 72 P.S. §7204; or (3) an acquisition un-

der 61 Pa. Code §31.32(g)(1), pertaining to resale or rental of computer equipment. Since petitioner voluntarily, and erroneously, paid the sales tax, he would be entitled to a refund pursuant to Section 253, of the Code, 72 P.S. §7253, which provides that a petition for refund shall be filed ''with the department within *three years* of the actual payment of the tax.'' (Emphasis added.) It is undisputed that petitioner has not timely filed for refund under Section 253, and the Commonwealth argues that his petition should, therefore, be dismissed.

Petitioner contends, however, that the statute of limitations is extended in his case by virtue of Section 256 of the Code, which reads, in pertinent part:

> *Any party to a transaction who has paid tax by reason of a transaction with respect to which the department is assessing tax against another person may,* within six months after the filing by the department of the assessment against such other person, *file a special petition for refund,* notwithstanding his failure to file a regular petition within three years of the payment. . . . The purpose of this section is to avoid duplicate payment of tax where a determination is made by the department that one party to a transaction is subject to tax, and another party to the transaction has previously paid tax with respect to such transaction and, as such, this section shall be construed as extending right beyond that provided for by Section 253, and not to limit such other section. (Emphasis added.)

Petitioner argues that he is entitled to relief under this section because he acquired the computer equipment for the sole purpose of leasing it to All-Pak. Thus, petitioner contends that, while two events may

have taken place, *i.e.*, a purchase from Burroughs and a lease to All-Pak, only one transaction has occurred, *i.e.*, the acquisition of computer equipment for All-Pak. We disagree.

We believe that this case is factually similar to *Commonwealth v. Penn Fruit Co.*, 78 Dauph. 300 (1962).[1] In *Penn Fruit*, a wholly owned subsidiary corporation entered into an agreement with the parent corporation, leasing to the parent various types of personal property used by the parent in its business. The subsidiary did business with no one other than the parent and had the same officers and directors as the parent. The entire cost of maintaining the subsidiary was borne by the parent, and the salaries of the clerical workers of the subsidiary were paid by the parent. All of the equipment purchased by the subsidiary was delivered directly to the parent, and all purchases were paid by checks made by the subsidiary. Both the parent and the subsidiary maintained separate records and accounts.

The subsidiary challenged the assessment of a sales tax against it, arguing that there was no sale at retail between the companies because of the extremely close relationship between them. The court refused to pierce the corporate veil, reasoning:

---

[1] The jurisdiction given to the Commonwealth Court by its enabling legislation, The Commonwealth Court Act, Act of January 6, 1970, P.L. (1969) 434, *as amended*, repealed by Section 2(a) of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, 42 P.S. §20002(a) [1439], was substantially that of the Dauphin County Court of Common Pleas at its Commonwealth Docket. For a full treatment of the history and expansion of the jurisdiction of the Commonwealth Court, see *The Commonwealth Court of Pennsylvania: Jurisdiction and Jurisdictional Question*, 47 Temp. L.Q. 86 (1973); A. Lipez, *History of the Commonwealth Court*, 1 Pa. Commonwealth Ct. vii (1971).

Since a wholly owned subsidiary is generally incorporated or acquired by the parent corporation for the purpose of advantageously carrying on some phase of the parent corporation's activities or business, the courts have been reluctant to disregard the separate legal entities of the parties merely to grant relief from sales, or similar, taxes at the expense of the state or its subdivision. Thus, the contention that because the wholly owned subsidiary and the parent corporation are so closely integrated, sales by one to the other do not constitute 'sales' within the meaning of a sales tax, or similar, statute has been rejected by a number of courts.

This conclusion has been reached in a number of states where the issue involved sales by a wholly owned subsidiary to the parent corporation, especially where the parties to the transaction have recognized their status as separate legal entities for a considerable time, enjoyed the economic advantages resulting therefrom and in making the transactions observed the usual formalities of purchase and sale, 64 A.L.R. 2d 771, citing: Rexall Drug Co. v. Peterson, 113 Cal. App. 2d 528 (1952), 248 Pac. 2d 433; Re Bush Terminal Co. (1938, CA 2 NY), 93 F.2d 661. See also Commonwealth v. Sylvan Seal Milk, Inc., 77 Dauphin 54, 59 (1961).

It is well established that the separate corporate identity of such parent corporation and its wholly owned subsidiary will not be disregarded in order to grant relief from sales and other similar taxes at the expense of the state, Superior Coal Co. v. Department of Finance,

36 N.E. 2d 354 (Ill. 1941); Northwestern Pac. R. Co. v. State Board of Equalization of California, 133 P.2d 400 (Cal. 1943); In re Bush Terminal Co. (1938, CA 2 NY), 93 F.2d 661 (1939); Rexall Drug Co. v. Peterson, 248 P.2d 433 (Cal. 1952); Simmons Hardware Co. v. City of St. Louis, 192 S.W. 394 (Mo. 1916). In these cases it was of no avail to the taxpayers that the officers and directors of the parent and subsidiary were the same or that the parent corporation furnished accounting, financial, executive and managerial services for the subsidiary, nor was it of significance that the transactions between the parent and subsidiary did not result in a profit to one or the other.

We cannot, therefore, agree with the appellant's contentions that these two corporations should be treated as one when, for all purposes, they operated as separate and distinct corporations fulfilling their separate and distinct objectives.

*Id.* at 304-05.

Here, petitioner's situation is remarkably similar to that of the subsidiary in *Penn Fruit*. The record reveals that petitioner executed two separate contracts, one with Burroughs and one with All-Pak. Petitioner signed the check for Burrough in his *individual* capacity and the check was drawn on his individual checking account. The equipment was leased to All-Pak by petitioner in his individual capacity, and petitioner received the allowable federal tax benefits on his personal income tax return by the lease of the equipment to All-Pak. If we were to characterize these events as one transaction, we would allow petitioner to be an individual for purposes of federal taxation but part of All-Pak for purposes of state taxa-

tion. We will not countenance such inconsistent claims.

We therefore conclude, much like the court in *Penn Fruit,* that we will not disregard the separate legal entities of petitioner as an individual and All-Pak as a corporation, especially when petitioner enjoyed an economic advantage resulting from the contracts and, in making the contracts, observed the usual formalities of purchase and sale. *See also Shelburne Sportswear, Inc. v. Philadelphia,* 422 Pa. 199, 220 A.2d 798 (1966). Under these circumstances, we believe that there were two transactions, one between petitioner and Burroughs and one between petitioner and All-Pak.

Accordingly, we enter the following

ORDER

AND Now, this 9th day of December, 1980, the order of the Board of Finance and Revenue in the above captioned case, dated November 28, 1979, is hereby affirmed.