563 A.2d 940

**CITY OF PITTSBURGH, a municipal government; Stephen A. Schillo, Treasurer; and Henry Wilson, Assistant Director of Taxes, Appellants,**

v.

**DRAVO CORPORATION, a Pennsylvania corporation, Appellee (Two Cases).**

**DRAVO ENGINEERS, INC., a Pennsylvania corporation, Appellant,**

v.

**CITY OF PITTSBURGH, a municipal corporation; Stephen A. Schillo, Treasurer; City of Pittsburgh; and Henry Wilson, Assistant Director of Taxes, Appellees.**

Commonwealth Court of Pennsylvania.

Argued May 4, 1989.

Decided Aug. 15, 1989.

Reargument Denied Oct. 25, 1989.

Petition for Allowance of Appeal Denied April 16, 1990.

Ronald H. Pferdehirt, Asst. City Sol., with him, D.R. Pellegrini, City Sol., for appellants/appellees, City of Pittsburgh, Treasurer, and Asst. Director of Taxes.

Louis C. Long, with him, Scott W. Irmscher, Meyer, Darragh, Buckler, Bebenek, Eck & Hall, Pittsburgh, for appellees/appellants, Dravo Corp. and Dravo Engineers, Inc.

Before CRAIG and DOYLE, JJ., and KALISH, Senior Judge.

CRAIG, Judge.

The City of Pittsburgh, the City of Pittsburgh Treasurer and the City of Pittsburgh Assistant Director of Taxes appeal an order of the Court of Common Pleas of Allegheny County directing the city to refund to Dravo Corporation (Dravo) $153,716 in business privilege taxes paid for the 1982 tax year, plus interest, and vacating a deficiency assessment against Dravo for business privilege taxes owed in the amount of $29,775.16, for the tax years 1981 through 1984, plus interest and penalty. Additionally, Dravo Engineers, Inc. (DEI), a wholly-owned subsidiary of Dravo, appeals the same order dismissing DEI's claim for a refund of $256,116 of paid business privilege taxes.

## History

Dravo is a Pennsylvania corporation conducting an engineering, construction and manufacturing business from its home office in Pittsburgh. In 1982, Dravo, computing its 1982 tax liability based on its 1981 gross receipts, paid a business privilege tax in the amount of $425,872. Because Dravo had been conducting business in Pittsburgh for the entire 1981 calendar year, Dravo calculated its 1982 tax liability in accordance with section 243.03(a) of the Pittsburgh Code, which provides that "[e]very person, subject to the payment of the tax hereby imposed who has commenced his business at least one full year prior to the beginning of any tax year shall compute his tax upon the actual receipts received by him during the preceding calendar year."

On July 1, 1982, Dravo's reorganization of its corporation went into effect. As part of the reorganization, Dravo created DEI for the purposes of performing all engineering activities in a more efficient manner than previously performed by Dravo and to create more business by securing contracts which Dravo had been unable to obtain because of various labor laws and agreements.

On October 14, 1982, DEI filed its initial business privilege tax return, and paid $132,446 for the six months it conducted business in 1982. Because DEI commenced business activity in 1982, DEI computed its tax liability in accordance with section 243.03(c) of the Pittsburgh Code, which provides that "[e]very person subject to the payment of the tax hereby imposed who commences or has commenced his business subsequent to the beginning of any tax year shall compute his tax for such year·upon the gross receipts generated by the business during the first month of such business multiplied by the number of months or fraction thereof remaining in the tax year." Thus, DEI calculated its 1982 tax liability by annualizing the gross receipts from the month of July, 1982.

In April of 1983, DEI filed its 1983 business privilege tax return, and paid taxes in the amount of $264,892. Because DEI did not have a full year of business activity in 1982, DEI computed its tax liability in accordance with section 243.03(b) of the Pittsburgh Code, which provides that "[e]very person subject to the payment of the tax hereby imposed, who commences or has commenced his business less than one full year prior to the beginning of any tax year, shall compute his tax for such tax year upon the gross receipts generated by the business during the first month he engages in such business activity multiplied by twelve." Thus, DEI calculated its 1983 tax liability by, again, annualizing the gross receipts from the first month of operation—July, 1982. Additionally, in 1983, Dravo paid business privilege taxes based on its 1982 gross receipts.

### Claims

On April 6, 1984, Dravo filed a request for a business privilege tax refund in the amount of $153,716 for taxes paid in 1982, contending that, because Dravo discontinued its engineering business as of July 1, 1982, Dravo is entitled to a pro rata refund pursuant to section 703(b) of the Business Privilege Tax Regulations of the City of Pittsburgh.

The Treasurer, following a hearing on July 3, 1984, denied Dravo's refund claim. Dravo then filed a statutory appeal with the Court of Common Pleas of Allegheny County on August 24, 1984, asserting that the discontinuance of the engineering business, the ambiguity of the code and regulations relating to refunds, and the city's receipt of a duplicate tax payment entitle Dravo to the requested refund.

On October 1, 1984, DEI filed a request for business privilege tax refunds in the amounts of $132,446 paid in 1982 and $123,670 paid in 1983, contending that the taxes had been erroneously calculated on the assumption that DEI commenced a new business, that the tax base for DEI should be that of Dravo's and that, because Dravo had already paid its business privilege tax in the same years, the city received a windfall payment by levying the tax upon DEI.

The Assistant Director of Taxes for the City of Pittsburgh notified DEI by letter, dated October 2, 1983, that the refund claims had been denied. DEI then requested a Treasurer's hearing to discuss the merits.

Additionally, on August 13, 1985, following a routine audit of Dravo's financial records, the Treasurer issued to Dravo a notice of assessment for business privilege taxes owed in the amount of $29,775.16, plus interest and penalty, covering the tax years 1981 through 1984. The Treasurer based the deficiency assessment upon the discovery that Dravo had excluded from its reported gross annual receipts those receipts generated by the payment of intercompany management fees. Specifically, Dravo's business records indicated that management fees had been invoiced by Dravo to its various subsidiaries, and that appropriate adjustments had been made to the subsidiary accounts to reflect actual payment of the management fees by the subsidiaries to Dravo.

On November 14, 1985, the Treasurer held a hearing to review DEI's refund claim and the deficiency assessment against Dravo. On July 21, 1986, the Treasurer, issuing

separate adjudications, denied the refund claim of DEI and affirmed the deficiency assessment against Dravo. DEI and Dravo then filed separate statutory appeals with the Common Pleas Court of Allegheny County. On October 29, 1986, Judge Doyle consolidated both appeals along with Dravo's business privilege tax refund appeal.

### Trial Court Disposition

The trial court, after oral argument on December 7, 1987, (1) sustained Dravo's tax refund appeal and ordered the city to refund to Dravo the sum of $153,716, plus interest; (2) sustained Dravo's deficiency assessment appeal and reversed and vacated the deficiency assessment for business privilege tax in the amount of $29,775.16, plus interest and penalties; and (3) dismissed DEI's tax refund appeal.

The city now appeals both Dravo matters to this court, and likewise, DEI appeals the dismissal of its refund request. On March 8, 1988, by order of Judge Blatt, this court consolidated all three appeals for argument.

### General Considerations

The business privilege tax, ruled valid by the Pennsylvania Supreme Court in *Goldstein v. Pittsburgh School District*, 372 Pa. 188, 93 A.2d 243 (1952), is a current year's estimated tax based on *previous* business activity. By definition in the tax ordinance, the delay effect will always preclude a taxpayer from paying present year business privilege taxes based on present year business activity for the entire present year.

To summarize the computation of business privilege taxes under Chapter 243 of the Pittsburgh Code, enacted pursuant to section 2 of the Local Tax Enabling Act,[1] the amount of tax owed for the current year is based on the length of existence of the business. A business in existence during the entire preceding tax year measures its tax liability solely on the basis of the previous year's actual gross

1. Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. § 6902.

receipts. A business in existence for part of the preceding tax year measures its tax liability on the basis of the gross receipts generated during the first month of business activity, multiplied by twelve. Finally, a business in existence for only part of the current tax year measures its tax liability on the basis of gross receipts generated during the first month of business activity, multiplied by the actual number of months, or fraction thereof, remaining in the tax year.

### 1. DEI—Independent Status as New Taxpayer

[1] Because the applicable business privilege tax computation section is based on the time an entity commences its business, the first issue we must resolve is whether DEI became a "new" business as of July 1, 1982.

Although the Pittsburgh Code does not distinguish "new" from "existing" business, the Pennsylvania Supreme Court has stated that, so long as the corporation's "purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity." *Shelburne Sportswear, Inc. v. Philadelphia*, 422 Pa. 199, 204, 220 A.2d 798, 800 (1966) (quoting *Moline Properties, Inc. v. Commissioner of Internal Revenue*, 319 U.S. 436, 438–39, 63 S.Ct. 1132, 1133–34, 87 L.Ed. 1499 (1943)). Furthermore,

> even though 'a wholly owned subsidiary is generally incorporated or acquired by the parent corporation for the purpose of advantageously carrying on some phase of the parent corporation's activities or business, the courts have been reluctant to disregard the separate legal entities ... merely to grant relief from sales, or similar taxes at the expense of the state or its subdivisions.'

*Id.* 422 Pa. at 204, 220 A.2d at 800 (quoting *Commonwealth v. Penn Fruit Co., Inc.*, 78 Dauph. 300, 304 (1962)).

Therefore, DEI is a taxable entity in its own right. Moreover, unless DEI could prove that DEI had actual business activity and income before July of 1982, the Pittsburgh Code indicates that DEI *must* be taxed as a "new" business.

Dravo and DEI rely on the case of *Don Allen Chevrolet Co. v. City of Pittsburgh,* 414 Pa. 429, 200 A.2d 388 (1964), for the proposition that the incorporation of DEI was merely a transfer of an existing business.

The facts in *Don Allen Chevrolet* are that in 1951, the Don Allen Chevrolet Company became a franchised General Motors retail dealer. On December 29, 1958, the company changed its corporate name to the Edson Investment Company. On December 30, 1958, the Edson Investment Company formed a new Pennsylvania corporation under the name of the Don Allen Chevrolet Company. On December 31, 1958, the Edson Investment Company transferred *every* asset, with the exception of the building, to the newly formed Don Allen Chevrolet Company. The Don Allen Chevrolet Company continued the automobile business at the same location and *in the same manner* as its predecessor, utilizing the same employees and procedure without interruption.

The parties disputed, as do those in the present case, when Don Allen Chevrolet Company commenced its business for the purposes of determining mercantile tax liability. The Court, holding that the Don Allen Chevrolet Company did not commence a new business, concluded that, because the business activity continued without interruption in the same manner and with precisely the same personnel, equipment, inventory and even cash on hand, the "taxpayer merely *continued* an already going and existing business." *Id.,* 414 Pa. at 433, 200 A.2d at 390 (emphasis in original).

However, the *Don Allen Chevrolet* case is not applicable here. Because the transaction between the Edson Investment Company and the Don Allen Chevrolet Company involved a *complete* transfer of an already existing business, *actual receipts* from the entire previous year of *identical* business activity were available, thereby eliminating the necessity of having to estimate annual earnings.

In the present case, Dravo did not transfer its entire operation to DEI. Although DEI assumed Dravo's engineering activity, Dravo retained all other aspects of its

business. DEI picked up only a minor portion of Dravo's existing business.

Because of the non-discrete nature of Dravo's engineering operations transferred to DEI, a precise calculation of Dravo's 1981 engineering-related receipts, which DEI seeks to utilize as the basis for its own tax liability, cannot be determined. DEI has not presented actual 1981 gross receipts which would accurately reflect the engineering business in 1981. Therefore, in accordance with the Pittsburgh Code, DEI properly calculated its 1982 and 1983 business privilege tax liability using July of 1982 as the basis.

### 2. Dravo's 1982 Tax

■ Alternatively, Dravo contends that, under the theory of improper "double taxation," it is entitled to a pro rata refund of business privilege taxes it allegedly paid on engineering business for the second half of 1982, in view of Dravo's discontinuance of the engineering business in mid–1982.

This court resolved the issue of duplicate business privilege taxation in the case of *Kronz Builders, Inc. v. City of Pittsburgh*, 28 Pa.Commonwealth Ct. 176, 367 A.2d 1144 (1977). In *Kronz Builders*, the taxpayer corporation argued that the City of Pittsburgh assessed a duplicate tax because the gross receipts of the taxpayer had been subjected to the business privilege tax when included in the gross receipts of another taxpaying entity. The court rejected the taxpayer's argument and, adopting the opinion of Judge Ross of the Court of Common Pleas of Allegheny County stated:

> We do not deal here with a matter which may be reconciled by reference to principles of fairness. What tax consequences should flow in the instant case is a matter of legislative intent.

*Id.*, 28 Pa. Commonwealth Ct. at 179, 367 A.2d at 1146.

Furthermore, to emphasize that Dravo did not pay a duplicate tax, we call attention to the measure of Dravo's estimated 1982 business privilege tax: A business in exist-

ence the entire previous tax year pays the present year's business privilege tax based on the previous year's actual gross receipts.

Thus, in 1982, Dravo paid taxes based on its receipts from 1981—a year in which Dravo's activities included all aspects of the business. Although Dravo ceased conducting its engineering business as of July 1, 1982, the Dravo Corporation continued, and accordingly, paid taxes based on the 1981 receipts, without reference to its 1982 business activity.

However, in 1983, Dravo received the benefit of a lower tax base when it paid taxes based on the actual gross receipts of 1982, a year in which the receipts were reduced proportionally by its relinquishment of the engineering business. Thus, Dravo essentially received the tax reduction, which it now seeks, in 1983 upon payment of that year's business privilege taxes as measured by the reduced receipts of 1982.

Section 703(b) of the City of Pittsburgh Business Privilege Tax Regulations provides, in pertinent part, that "[e]very person who ceases to carry on a business during any tax year after having paid the Business Privilege Tax for the entire year shall ... be entitled to receive a prorata refund of the tax paid based upon the period of time he *was not in business* during the tax year." (Emphasis added.) Because Dravo continued its business in 1982, although in reorganized form, Dravo never achieved the "not in business" status required by section 703(b) to be entitled to a pro rata refund.

### 3. Dravo's Intercompany Management Fees

■ The third issue is whether Dravo is required to include intercompany management fees paid by its subsidiaries in the gross receipts used to calculate Dravo's business privilege tax liability.

Section 243.01(e) of the Pittsburgh Code provides the following:

(e) 'Gross receipts' means cash, credits, property of any kind or nature *received* in or allocable or attributable to the City *from any business, or services rendered,* or commercial or business transactions without deduction therefrom on account of the cost of property sold, materials used, labor, service or other cost, interest or discount paid, or any other expense. (Emphasis added.)

Testimony by Dravo's counsel indicates that Dravo did perform the services of "bookkeeping," "SEC reporting," and providing DEI "a little bit of rent." Moreover, Dravo admits that its business records reflect receipt of payment of intercompany management fees by the taxpaying subsidiaries to Dravo. Therefore, the receipt of such payment must be included in Dravo's actual gross receipts.

## Conclusion

Finally, because we hold that neither Dravo nor DEI is entitled to any refund, there is no interest-owed issue requiring our attention.

Accordingly, the order of the trial court is affirmed as to denying DEI's refund, but reversed as to granting Dravo its refund and permitting Dravo to exclude receipt of management fees from its actual receipts.

## ORDER

### No. 127 C.D.1988

NOW, August 15, 1989, the order of the Court of Common Pleas of Allegheny County, No. S.A. 1102 of 1984, dated November 10, 1988, is reversed, thereby denying Dravo's request for a pro rata refund for the 1982 tax year.

## ORDER

### No. 128 C.D.1988

NOW, August 15, 1989, the order of the Court of Common Pleas of Allegheny County, No. S.A. 1471 of 1986,

dated November 10, 1988, is reversed, thereby reinstating the deficiency tax assessment in the amount of $29,775.16, plus interest and penalty, for the tax years 1981 through 1984.

## ORDER

### No. 181 C.D.1988

NOW, August 15, 1988, the order of the Court of Common Pleas of Allegheny County, No. S.A. 1470 of 1986, dated November 10, 1988, is affirmed.