HARRY ALAN GREGG, JR. FAMILY FOUNDATION, INC. *vs.*
COMMISSIONER OF CORPORATIONS AND TAXATION
(and two companion cases between the same parties).

Suffolk.    May 4, 1953. — November 13, 1953.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & COUNIHAN, JJ.

*Taxation,* Corporate excise, Foreign corporation.  *Corporation,* Business
corporation, Nonprofit corporation, Foreign corporation.  *Words,*
"Carrying on business for profit."

A Delaware "nonprofit business corporation" which, although it might
properly engage in business and did so in Massachusetts, was per-
mitted to distribute the profits from its activities and its available
assets upon dissolution only to certain charitable corporations, and
which did not appear to have allowed its shareholders to receive
profits by any subterfuge, was not "established . . . for the purpose
of carrying on business for profit" within G. L. (Ter. Ed.) c. 156, § 2,
and therefore was not a foreign corporation as defined in c. 63, § 30,
cl. 2, and was not subject to the excise imposed on foreign corpora-
tions by c. 63, § 39.

APPEALS from decisions by the Appellate Tax Board.
*David R. Herwitz,* (*Haskell Cohn* with him,) for the tax-
payer.
*H. William Radovsky,* Special Counsel, for the commis-
sioner of corporations and taxation.
SPALDING, J.    These are three appeals from decisions of
the Appellate Tax Board sustaining the denial by the com-
missioner of corporations and taxation of three applications
for the abatement of taxes imposed on the appellant in the
years 1949, 1950, and 1951 under G. L. (Ter. Ed.) c. 63,
§ 39, as amended.  Inasmuch as each case presented the
same questions of law they were considered together by
the board and we shall do likewise.
    The board's findings, based on undisputed evidence, were
these: The appellant, Harry Alan Gregg, Jr. Family Foun-

dation, Inc. (hereinafter called the Foundation), was duly organized as a Delaware "non-profit business corporation" on June 24, 1948. The creation of the Foundation was motivated by the interest of Harry A. Gregg in the charitable activities of the New Hampshire Society for Crippled Children and Handicapped Persons and by his desire to establish a memorial for his son Harry Alan Gregg, Junior, and the son's family, all of whom had perished in a fire on February 23, 1948. By the third clause of its certificate of incorporation, the Foundation is to be operated "exclusively for charitable, scientific, literary and educational purposes . . . ." Although clause 4 (b) of the certificate permits the Foundation to engage in any kind of business activity, the permission is "Subject . . . to the provisions of Paragraph (a)" of the fourth clause. That clause declares one of the "specific objects" of the Foundation to be "To distribute to New Hampshire Society for Crippled Children and Handicapped Persons . . . and The Sceva Speare Foundation, Inc.[1] . . . [hereinafter referred to as the corporate beneficiaries],[2] such part of . . . [the Foundation's] property and its net income, or both, in such proportions and at such times as the Directors . . . [of the Foundation] may determine . . . ."

The directors are given "the power to make unequal distribution or to make distribution entirely to one corporation . . . if they so determine, their decision to be final and binding." Stockholders and directors may be reimbursed "for all expenses incurred . . . in connection with the management and administration of the affairs and business of the Foundation, and . . . paid the reasonable value of services rendered in any capacity other than as Stockholder or Director," but only the corporate benefici-

[1] At the suggestion of Harry A. Gregg, The Sceva Speare Foundation, Inc., had been formed by his friend Sceva Speare for the purpose of constructing and maintaining a trade school and farm project as part of the rehabilitation program of a hospital of the Society.

[2] To receive distributions from the Foundation these corporations must qualify as tax exempt charitable institutions under U. S. C. (1946 ed.) Title 26, § 101 (6). Alternative distributees are provided in the event that the corporate beneficiaries fail to qualify.

aries are permitted to benefit from the operation of the Foundation, and upon its liquidation only these beneficiaries may share in the assets available for distribution.

Before the incorporation of the Foundation, a Massachusetts corporation, Hall-Gregg Incorporated (hereinafter called the corporation), had for many years conducted a jobbing business in doors, sashes, and building materials in Somerville. By July 1, 1948, all the outstanding stock in the corporation had been acquired by Harry A. Gregg, who donated it to the Foundation. On July 1, 1948, the corporation and the Foundation merged, the latter being the surviving entity. The Foundation carried on the business of the corporation, having duly filed a certificate stating that it was doing business under the name of Hall-Gregg Company. G. L. (Ter. Ed.) c. 110, § 5, as appearing in St. 1948, c. 550, § 15. A certificate was filed by the Foundation, as a foreign corporation doing business in Massachusetts, under G. L. (Ter. Ed.) c. 181.

From its incorporation in 1948 to the end of 1950, the Foundation distributed $100,000 to the New Hampshire Society for Crippled Children and Handicapped Persons, and real estate worth $198,197.24 to the Harry Alan Gregg, Jr. Family Trust. The latter is a Massachusetts trust and its beneficiaries are the same as those of the Foundation. No funds were distributed to the other corporate beneficiary (The Sceva Speare Foundation, Inc.) as it had not begun to function. Both of the corporate beneficiaries were duly qualified as tax exempt charitable institutions under the Federal internal revenue law. No distribution of any sort was made to the stockholders or directors as such. The Foundation paid salaries to its officers in the second half of 1948, and in 1949 and 1950 for services actually rendered to it. The aggregate amount of taxes and interest paid by the appellant, the abatement of which is sought in these proceedings, is $38,613.09. The application for abatement in each case was denied by the commissioner and his decisions were sustained by the Appellate Tax Board.

The board concluded that the Foundation "was organized and operated for the purpose of carrying on a business for profit, and to turn over the profits realized from its business activities to the charitable corporations named in the . . . [Foundation's] certificate of incorporation." The board ruled that a foreign corporation organized and operated for those purposes was "established . . . for the purpose of carrying on business for profit" within the meaning of G. L. (Ter. Ed.) c. 156, § 2; that the Foundation was, accordingly, a corporation "chartered under laws other than those of the commonwealth, for purposes for which domestic corporations may be organized under chapter one hundred and fifty-six" and hence was a foreign corporation as defined in G. L. (Ter. Ed.) c. 63, § 30, cl. 2; and that it was therefore subject to the corporate excise tax imposed by G. L. (Ter. Ed.) c. 63, § 39.

General Laws (Ter. Ed.) c. 63, § 39, imposes an excise tax upon foreign corporations as those are defined in § 30, cl. 2, of the chapter. The definition in § 30, cl. 2, so far as here material, is: "[E]very corporation . . . chartered under laws other than those of the commonwealth, for purposes for which domestic corporations may be organized under chapter one hundred and fifty-six, which has a usual place of business in this commonwealth . . . ." Chapter 156 does not in terms set forth the purposes for which corporations may be organized under its provisions, but § 2 thereof states that the chapter "shall apply to all . . . domestic corporations [with exceptions not material here] having a capital stock and . . . established . . . for the purpose of carrying on business for profit . . . ." The sole issue presented by these appeals is whether the Foundation was chartered "for the purpose of carrying on business for profit" within the meaning of G. L. (Ter. Ed.) c. 156, § 2. If it was not, it is not a foreign corporation within the intendment of G. L. (Ter. Ed.) c. 63, § 30, cl. 2, for it would not be formed "for purposes for which domestic corporations may be organized under chapter one hundred and fifty-six" and hence could not be subject to the excise tax imposed

on foreign corporations by c. 63, § 39. The amount of the taxes, if any are due, is not in dispute.

The principal argument of the commissioner is in substance this: The Foundation operates a jobbing business of buying and selling millwork; it was therefore engaged in "business." "If a corporation engages in business, it does so to make money, not to lose it or just break even." Thus, it is argued, the Foundation could incorporate under G. L. (Ter. Ed.) c. 156, since the requirement that it be "established . . . for the purpose of carrying on business for profit" is met so long as gains or earnings are expected to come into the possession of the corporation. That the ultimate purpose of the Foundation was to make distributions to the corporate beneficiaries is irrelevant, because its "immediate and primary purpose was to operate a jobbing business without which the ultimate purpose would be in vain." In other words unless there were profits there could be nothing to distribute to the charities. A corporation of this sort, the commissioner urges, could not have been organized under G. L. (Ter. Ed.) c. 180, as a charitable corporation.

The Foundation's position in substance is that a corporation which is empowered to distribute the proceeds of its activities only to charity, even though it engages in business activities, is not engaged in "business for profit" within the meaning of G. L. (Ter. Ed.) c. 156, § 2. We are of opinion that the Foundation's contention must be sustained.

The question presented is one concerning which our decisions do not furnish much assistance. The test is not whether the Foundation could or could not have been organized under c. 180. Nor is the fact that it was formed as a nonprofit corporation under Delaware law controlling. Both sides rely to a considerable extent on decisions of this court dealing with exemption from local taxation of religious, educational, and charitable corporations, and those involving immunity of charitable corporations from tort liability. But these cases do not shed much light on the problem. The only case which appears to have construed

330 Mass. 538                                                    543

Harry Alan Gregg, Jr. Family Found'n Inc. v. Com'r of Corp'ns & Tax'n.

the words "established for the purpose of carrying on business for profit" is *Tulane University* v. *O'Connor*, 192 Mass. 428, on which both sides place considerable reliance. There the university owned a hotel building in this Commonwealth which it had leased to O'Connor.  In an action against O'Connor and others who had guaranteed the payment of the rent stipulated in the lease, the defendants contended that the plaintiff could not maintain the action because of its failure to file a certificate or power of attorney with the commissioner of corporations as required by R. L. c. 126, § 4, or St. 1903, c. 437, §§ 58, 60, now G. L. (Ter. Ed.) c. 181, § 3 as amended, § 5.  This court held that the requirement of filing these papers with the commissioner applied only to foreign corporations "having a capital stock and established for the purpose of carrying on business for profit," and that the plaintiff was not such a corporation.  And that was none the less true despite the facts that the plaintiff was engaged in no charitable or educational activities within the Commonwealth, and that its sole function here was of a business nature.

The *Tulane* case is not particularly helpful because the university was plainly a nonprofit corporation even though it derived some of its revenue from property devoted to business in this Commonwealth.  The commissioner contends that the court construed the words "carrying on business for profit" as the equivalent of "business."  While there is language in the opinion which lends some support to that proposition, the case cannot fairly be said to be authority for it.

In our opinion a corporation is organized for "carrying on business for profit" within the intendment of G. L. (Ter. Ed.) c. 156, § 2, if its income or profits from its business activities are, in the ordinary course of events, available for distribution to its shareholders.  Subterfuges and devices whereby a corporation allows its profits to be diverted to those owning it, though not in the form of dividends, would, of course, disqualify it from being classed as a nonprofit corporation.  This in substance is the test

adopted in *Read* v. *Tidewater Coal Exchange, Inc.* 13 Del. Ch. 195, 209–210,[1] which contains the best discussion on the point that we have seen. See Annotation, 16 A. L. R. (2d) 1345; Fletcher, Cyc. Corporations, § 68. For decisions construing the exemption granted to corporations organized exclusively for "charitable, scientific, literary, or educational purposes" by § 101 (6) of the Internal Revenue Code, U. S. C. (1946 ed.) Title 26, § 101 (6), see *C. F. Mueller Co.* v. *Commissioner of Internal Revenue,* 190 Fed. (2d) 120, and cases cited at page 121.

Applying this test here we are of opinion that the appellant is entitled to prevail. The facts found by the board are that the earnings of the Foundation, and upon dissolution its assets, could be distributed only to the corporate beneficiaries named in its charter (both of which are plainly charitable corporations), and that its shareholders were not permitted to benefit from the operations of the corporation. There is no finding, and the evidence affords no basis for one, to the effect that the shareholders received profits of the corporation in the form of exorbitant salaries or other subterfuge. In these circumstances we hold that it was not "established . . . for the purpose of carrying on business for profit" under G. L. (Ter. Ed.) c. 156, § 2. If this conclusion, as the board observed in its opinion, will have the effect of giving to the Foundation and corporations similarly organized unfair advantages over competing commercial corporations not so organized, the remedy must come from the Legislature and not from the courts. We must construe the statute as it is written and "have no right to conjecture what the Legislature would have enacted if they had foreseen the occurrence of a case like this." *King* v. *Viscoloid Co.* 219 Mass. 420, 425. Furthermore, we must not lose sight of the fact that we are dealing not with an exemption but with a taxing statute, where all doubts are to be resolved

___

[1] In citing the *Read* case, a Delaware decision, we are not to be understood as holding that the question here involved is governed by the law of that jurisdiction. The Foundation, to be sure, is a Delaware corporation but whether it is "carrying on business for profit" within the purview of G. L. (Ter. Ed.) c. 156, § 2, must be determined by our law.

in favor of the taxpayer. *Bolster* v. *Commissioner of Corporations & Taxation,* 319 Mass. 81, 85.

It follows that the Foundation is not a foreign corporation as defined in G. L. (Ter. Ed.) c. 63, § 30, cl. 2, and is not subject to the tax imposed by § 39 of that chapter. Abatement is granted in the amount of $38,613.09 with costs.

*So ordered.*