Lenk, J.
Third-party plaintiff J.M. Cashman, Inc. (“Cashman”) moves for partial summary judgment pursuant to Mass.R.Civ.P. 56. Cashman argues that the defense and indemnification clauses in its subcontract with third-party defendant North American Site Developers, Inc. (“NASDI”) are valid under G.L.c. 149, §29C and should be enforced. Cashman requests that the court allow its motion and order that NASDI immediately defend and indemnify Cashman for any liability it may incur in Hufnagle’s action against Cashman (“the Hujhagle case”).
NASDI opposes Cashman’s motion and has filed a cross-motion for summary judgment. In its opposition, NASDI contends that genuine issues of material fact preclude summary judgment for Cashman. Alternatively, NASDI asserts in its motion for summary judgment that there are no issues of material fact and that insufficient evidence has been produced to show that NASDI caused any injury to Hufnagle.
BACKGROUND
The following facts are not disputed, except where noted. Cashman was hired by the Massachusetts Water Resources Authority (“MWRA”) to be the general contractor on a construction project. Cashman hired NASDI as a subcontractor on that project. James Hufnagle (“Hufnagle”) was employed by NASDI and worked on the site. Hufnagle has brought a personal injury complaint against Cashman and Jared Construction Corporation (“Jared”), another subcontractor performing work at the construction site. Cashman, in turn, filed a complaint for indemnification against NASDI based on the terms of their subcontract.
Hufnagle alleges that he was injured on or about October 23, 1989 while working at the construction site. He alleges that a rock rolled from a debris pile and *676 struck his left leg, injuring him. An employee of Jared was operating a backhoe supplied by Jared while Hufnagle, a NASDI employee, removed steel reinforcement bars from the concrete debris. In his Complaint, Hufnagle alleges that the Jared employee was operating the backhoe negligently and caused the rock to strike him. He also alleges that Cashman, as general contractor, breached its duty to maintain the premises in a reasonably safe condition. In its Third-Party Complaint, Cashman denies that it was negligent, “but states that if it was negligent and if its negligence contributed to cause injury to the plaintiff, then the negligence of [NASDI], through its employees, agents or servants, contributed to or caused the injury to the plaintiff.”
Cashman asserts, in its Reply Memorandum and Opposition, that material facts are in dispute as to NASDI’s negligence.[2] According to Hufnagle’s deposition testimony, a NASDI supervisor would tell the backhoe operators where to go. (Depo. of Hufnagle at 85-86.) Hufnagle also testified that he could have moved further from where the backhoe was casting the debris. (Depo. of Hufnagle at 91-93.) Hufnagle testified that he was moving toward the backhoe as it dumped debris. (Depo. of Hufnagle at 81-85.)
The following provisions of the subcontract between Cashman and NASDI (“the Subcontract") and the general contract between the MWRA and Cashman (“the General Contract”) are relevant to the issues at bar. Section 1(a) of tihe Subcontract provides, in pertinent part:
The Subcontractor agrees to be bound to the Contractor by the terms of the hereinbefore described plans, specifications (including all general conditions stated therein) and ... to assume to the Contractor all the obligations and responsibilities that the Contractor by those documents assumes to the Mass. Water Resourses (sic) Authority hereinafter called the “Awarding Authority,” except to the extent that provisions contained therein are by their terms or by law applicable only to the Contractor.
This paragraph refers to the General Contract, which provides:
ARTICLE 5 — INDEMNIFICATION
5.1 CONTRACTOR'S INDEMNITY
5.1.1 The Contractor shall indemnify, defend with counsel acceptable to the Authority, keep and save harmless the Commonwealth of Massachusetts, the Authority . . . against all suits, claims, damages, losses and expenses, . . . caused by, arising out of, resulting from, or incidental to, the performance of the Work under this Contract by the Contractor or his Subcontractors to the full extent allowed by the laws of the Commonwealth of Massachusetts and not beyond any extent that would render these provisions void or unenforceable, provided that any such suit, claim, damage, loss, or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and is caused in whole or in part by any default, negligence or act or omission of the Contractor, any Subcontractor, any one for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder. Such agreement and obligation of the Contractor shall not be construed to negate, abridge, or otherwise reduce any right or obligation of indemnity which would otherwise exist as to any party or person described in this Paragraph 5.1. (Emphasis added.)
DISCUSSION
Summary judgment is appropriate when there are no disputed issues of material fact and the moving party is entitled to prevail as a matter of law. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). Where both parties have moved for summary judgment and “in essence there is no real dispute as to the salient facts or if only a question of law is involved,” summary judgment shall be granted to the party entitled to judgment as a matter of law. Cassesso, supra.
At issue in Cashman’s Motion for Partial Summary Judgment are questions of contract interpretation and statutory interpretation, which are questions of law. The facts which are material to those questions are undisputed. NASDI’s Motion for Summary Judgment requires that the court determine whether issues of material fact exist as to whether NASDI was responsible for Hufnagle’s injury, and, if not, whether NASDI is entitled to summary judgment as a matter of law.
I. Duty to Indemnify
In order to decide whether NASDI is obligated to indemnify Cashman, the court must first determine whether the Subcontract validly incorporated the indemnification provision of the General Contract. Secondly, the court must a certain whether the terms of the indemnification violate G.L.c. 149, §29C, which states in relevant part:
Any provision for or in connection with a contract for construction . .. which requires a subcontractor to indemnify any party for injury to persons or damage to property not caused by the subcontractor or its employees, agents or subcontractors, shall be void.
In Whittle v. PaganiBrothers Construction Co., Inc., 383 Mass. 796 (1981), the Supreme Judicial Court addressed the following incorporation language in a subcontract:
The Subcontractor agrees to be bound to the Contractor by the terms of the hereinbefore described plans, specifications (including all general *677 conditions stated therein) and ... to assume to the Contractor all the obligations and responsibilities that the Contractor by those documents assumes to the Mass. Water Resourses (sic) Authority hereinafter called the “Awarding Authority,” except to the extent that provisions contained therein are by their terms or by law applicable only to the Contractor.
The Court ruled that this language in the subcontract in Whittle, which is identical to the subcontract language in this case, expressly incorporated the indemnification provision of the general contract and stated that
[t]he natural reading of the subcontract language is to impose the same obligations on the subcontractor to indemnify the contractor against claims arising out of the performance of the subcontract as the main contract imposes on the contractor to indemnify the town against claims arising out of the performance of the main contract. Whittle, 383 Mass, at 799.
The language of the Subcontract in this case is straightforward and of widespread use in construction subcontracts. This language put NASDI on notice that it bore the same responsibilities toward Cashman that Cashman bore toward the MWRA, to the extent allowed by law. This includes the duly to indemnify. Accordingly, the indemnification provision of the General Contract is incorporated into the Subcontract.
In analyzing the validity of a subcontractor indemnification clause under G.L.c. 149, §29C, the Appeals Court has urged “focusing on the language of the indemnity clause . . . rather than on the facts of the particular accident and assessment of fault of the parties.” Callahan v. A.J. Welch Equipment Corp.; Sutton Corp., 36 Mass.App.Ct. 608, 611 (1994); Harnois v. Quannapowitt Development, Inc.; C&R Development Inc., 35 Mass.App.Ct. 286, 288-89 (1993). NASDI argues that the indemnification clause is invalid because NASDI is not in fact responsible for Hufnagle’s injuries. The question of whether Hufnagle’s injury was caused by NASDI’s negligence need not, and indeed, should not, be decided prior to the resolution of the question of whether the indemnification clause is valid under G.L.c. 149, §29C. Id. at 288.
The General Contract in this case uses language limiting the duty to indemnify to those situations where the harm is “caused in whole or in part by any default, negligence or act or omission of the Contractor, any Subcontractor, [or] anyone for whose acts any of them may be liable.” Accordingly, as this clause is incorporated in the Subcontract, the Subcontractor is only liable when it has caused the loss. This causation language stands in contrast to the indemnification provision at issue in Harnois, which did not require the subcontractor to have caused the loss in order to trigger liability.
In addition, the indemnification provision in this case contains a savings clause which obliges Cashman to indemnify the MWRA only “to the full extent allowed by the laws of the Commonwealth of Massachusetts and not beyond any extent that would render these provisions void or unenforceable ...” Article 5, Section 5.1, Subsection 5.1.1 of the General Contract. This savings clause, along with the duty to indemnify, is expressly incorporated. In Callahan v. A.J. Welch Equipment Corp., the Appeals Court ruled that a savings clause can be used to rectify an otherwise void indemnification provision. Id. at 611. The savings clause in the General Contract General Contract, as incorporated in the Subcontract, would render the indemnification provision valid under G.L.c. 149, §29C even if it were otherwise invalid.
II. Duty to Defend
The language of the General Contract also requires Cashman to defend the MWRA “with counsel acceptable to the Authority.” Cashman argues that the incorporation provision discussed above also applies to the duty to defend provision in the General Contract, rendering NASDI responsible for defending Cashman, just as Cashman is responsible for defending the MWRA. Accordingly, Cashman contends that NASDI should be required immediately to assume Cashman’s defense.
NASDI did not brief this issue, but argued in a hearing on February 13, 1995 that the duty to defend was not severable from the duty to indemnify and that both are invalid under G.L.c. 149, §29C. However, the court has found that the indemnification of the General Contract, as incorporated in the Subcontract, is valid under G.L.c. 149, §29C. Moreover, the court is not satisfied that G.L.c. 149, §29C has any application to the “duty to defend” provision now at issue.
In enacting G.L.c. 149, §29C, the legislature clearly indicated a desire to protect subcontractors from indemnification responsibility when they are not at fault. The fact that the statute directs courts to void indemnification provisions that do not require a showing of fault, even where the subcontractor is in fact at fault, underscores this public policy objective. It seems unfair and at odds with the public policy objectives underlying G.L.c. 149, §29C that a subcontractor who is not at fault should be required to defend a general contractor who may be at fault.
Nevertheless, G.L.c. 149, §29C does not address the duty to defend. The language of the statute is quite specific and has been read specifically. See Callahan v. A.J. Welch Equipment Corp.; Sutton Corp., 36 Mass.App.Ct. 608. Where the legislature has not spoken regarding “duty to defend” provisions such as the one at issue in this case, the court cannot infer its intent to address this specific situation. The court has “no right to conjecture what the Legislature would have enacted if they had foreseen the occurrence of a case like this.” Henry Alan Gregg, Jr. Family Founda *678 tion, Inc. v. Commissioner of Corporations and Taxation, 330 Mass. 538, 544 (1953), quoting King v. Viscoloid Co., 219 Mass. 420, 425 (1914).
Additionally, the court will not presume the invalidity of a bargained-for agreement between contracting parties. “The judicial bias is toward interpreting a contract ‘so as to make it a valid and enforceable undertaking rather than one of no force and effect.’ ” Finn v. McNeil, 23 Mass.App.Ct. 367, 372 (1987), quoting Shayeb v. Holland, 321 Mass. 429,432 (1947). Cashman and NASDI did not bargain for an agreement that NASDI should pay Cashman’s attorneys fees if NASDI is found to be liable; they bargained for a duty to defend provision. A duty to defend is unlike a duty to indemnify, which can only arise after a determination of liability at trial. If the duty to defend is to have meaning, it should arise immediately, before there is a determination of liability. Accordingly, the court will order that NASDI immediately assume Cashman’s defense in the Hufnagle case.
III. Negligence
In NASDI’s cross-motion for summary judgment, it argues that insufficient evidence has been produced to show that it was negligent or responsible for Hufnagle’s injuries. NASDI argues that Hufnagle’s injury is due entirely to the negligence of Jared and Cashman. In order to prevail on its indemnification claim, Cashman must show that NASDI at least partially caused Hufnagle’s injury.
“Ordinarily, summary judgment is not an appropriate means to resolve negligence cases, because usually the question of negligence is one of fact.” Roderick v. Brandy Hill Co., 36 Mass.App.Ct. 948, 949 (1994), citing Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983). The deposition testimony of Hufnagle puts NASDI’s liability into question. Because there are genuine issues of material fact in this case regarding liability which are properly resolved at trial, summary judgment for NASDI is denied.
ORDER
For the foregoing reasons, it is ORDERED that the Motion for Partial Summary Judgment of third-party plaintiff J.M. Cashman, Inc. be ALLOWED to the extent that: (a) the subject indemnification provision is declared to be valid and may be enforced if NASDI is proved at trial to have at least partially caused Hufnagle’s injury, and (b) that NASDI is obliged to defend Cashman in the Hujhagle litigation, and the Motion for Summary Judgment of third-party defendant North American Site Developers, Inc. be DENIED. Furthermore, North American Site Developers. Inc. is ORDERED immediately to assume the defense of J.M. Cashman, Inc. in the case of Hufnagle v. J.M. Cash-man, Inc. and Jared Construction Corp..

NASDI moves to strike this Reply Memorandum and Opposition, arguing that it inaccurately states Hufnagle’s deposition testimony. The Court relies on the transcript of that testimony provided by NASDI.